JAMES W. SMITH et al., Executors, Respondents, etc., *v.* CHARLES L. FROST, Appellant.

Where possession of property is obtained by a trustee as such and he refuses to deliver up the same on demand to the *cestui que trust,* who is entitled to possession, the trustee is liable in an action for conversion.

W. & J. were the owners of ten bonds of the P. & O. R. R. Co., which were pledged to C. as collateral to a loan, C. wrongfully pledged them to another and when the loan to W. & J. was paid could not return them. The mortgage given to secure the bonds of said company was foreclosed, defendant being one of the trustees for the bondholders.

The road was sold and a new company organized, of which defendant was for a time president. The owners of said ten bonds were entitled, upon surrender and upon payment of certain assessments, to sixteen bonds of the new company. W. & J. paid the assessments and the sixteen bonds were agreed to be held in escrow awaiting the return and cancellation of the old bonds, and defendant agreed to take the new bonds and hold them in trust for the owners repaying the interest to the owners as received. Defendant subsequently purchased the old bonds of the pledgee, and received the new bonds on surrender thereof. Plaintiff, who succeeded to the interests of W. & J., tendered to defendant the amount paid by him for the old bonds and demanded the new ones, which he refused to surrender. In an action for the conversion thereof, *held,* that defendant occupied the position of agent or trustee, and was estopped from claiming a benefit from the purchase, and that his refusal to surrender the new bonds was tortious, rendering him liable for a conversion.

Also *held,* that the fact that the new bonds were not in fact issued until after the surrender of the old bonds was immaterial.

(Argued May 25, 1877 ; decided June 5, 1877.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of the plaintiff entered upon a verdict. (Reported below, 7 J. & L., 389.)

This action was brought to recover damages for the alleged unlawful conversion of certain railroad bonds.

In 1857, William Smith and James W. Smith were the owners of ten bonds of the Peoria and Oquawka railroad company of $1,000 each, secured by the first mortgage upon the railroad and property of that company. The bonds were coupon bonds, payable to the bearer.

They borrowed some money of one Benjamin F. Camp, and placed these bonds with him as collateral to the loan. Subsequently, they paid him the loan; but, on calling for the bonds, they found that he had borrowed $5,000 upon them of the Union Mutual insurance company, and had pledged the bonds to that company. In December, 1862, the bondholders and other creditors of the Peoria and Oquawka railroad company entered into an agreement for the foreclosure of the mortgages upon its road, and the reorganization of the company. The defendant was connected with the Peoria & Oquawka railroad company. In the plan for

foreclosure and reorganization, he was one of three trustees to purchase and re-convey the property to a new corporation organized for the purpose. As trustee he was " to receive all the bonds and coupons " of the old company, and to purchase the road under the decree of foreclosure, for the benefit of all parties interested. Suits were commenced thereupon to foreclose three mortgages upon the property of the Peoria and Oquawka railroad company. A decree of foreclosure and sale was obtained November 23d, 1863, and the railroad and property was sold March 21st, 1864, and purchased by the defendant and Edward Weston, and Henry L. Marquand, as commissioners, agents and trustees of the bondholders, who associated under the plan of reorganization December 23d, 1862, and in the reorganization after the purchase, to form the Toledo, Peoria and Warsaw railway company, April 18th, 1864. The bondholders of the old road, who elected to come in under this plan, were required to pay each his proportion of the amount bid for the property. This was $66.66 upon each $1,000 bond; also, ten per cent. upon the amount of the bonds held by each person, for which a new bond of the new company was issued. According to plaintiff's testimony an arrangement was made between the Smiths and defendant that the former should pay the assessments on the ten Peoria and Oquawka bonds belonging to them, and also the ten per cent. assessment; that thereupon the new company should issue these new bonds, to which the holders of these bonds were entitled, and place them in the hands of the defendant as trustee for the Smiths, and that Frost should collect or receive the coupons and interest on these new bonds, and pay them over, deliver or account for them to the Smiths. This arrangement was to continue until the Smiths could get Camp to pay his note, or should pay it themselves, if they could not make him do it, so as to redeem the old bonds.

The Smiths accordingly made the payments as agreed. The owners of the ten bonds, upon such payments being made and upon surrender of the bonds, were then entitled to sev-

enteen bonds of the new company. One of these bonds the Smiths received for the $1,000 which they paid. The remaining sixteen were left in escrow, to be delivered when the old bonds were surrendered.

The interest on these bonds was, after this, regularly paid to the Smiths; the defendant giving them the coupons as they became due, or directing the treasurer of the company to do so. Or, the defendant would collect the coupons himself, and give the Smiths his check for the amount, less the tax. This continued until and including December, 1869.

Defendant was president of the Toledo, Peoria and Warsaw railway company after its organization.

Defendant, in 1870, purchased the hypothecated bonds of the insurance company, and received the new bonds in exchange. Plaintiffs, on learning this, tendered to defendant the amount which he had paid, with interest, and demanded the bonds; but defendant refused to surrender them.

Further facts appear in the opinion.

*Wm. F. Shepard,* for the appellant. The complaint should have been dismissed, as no cause of action was alleged or proved against defendant. (*Bk. of Rome,* v. *Vil. of Rome,* 19 N. Y., 20; *Finnegan* v. *Lee,* 18 How., 186; *Brainard* v. *N. Y. & A. R. R. Co.,* 25 N. Y., 496; *Haskin* v. *Patterson,* Edms., 180; *Milliken* v. *Dehon,* 10 Bosw., 325; *Wilson* v. *Little,* 2 N. Y., 443; *Herrick* v. *Woolverton,* 41 id., 581; *Wheeler* v. *Warner,* 47 id., 519; *Lewis* v. *Mott,* 36 id., 395; *Shell* v. *Telfore,* 4 N. Y. L. Obs., 307; 1 Pars. on Notes and Bills, 261; *Wood* v. *Chapin,* 13 N. Y., 509; *Webster* v. *Van Steenbergh,* 46 Barb., 211.) Plaintiffs having sued for a conversion, it was error to allow them to recover for the breach of an alleged agreement. (*Barnes* v. *Quigley,* 59 N. Y., 265, 268; *Harden* v. *Corbett,* 6 Hun, 522; *Austin* v. *Rawdon,* 44 N. Y., 63, 70; *Connaughty* v. *Nichols,* 42 id., 83, 88.)

*Henry L. Burnett,* for the respondents. Defendant was a

trustee for the Smith's and could not deal with the bonds to the prejudice of their owner. (*Butts* v. *Wood*, 38 Barb., 181; *Cumb. Co.* v. *Sherman*, 30 id., 554; *Scott* v. *Depuyster*, 1 Edw. Ch., 542; *Michael* v. *Girard*, 4 How. [N. S.], 553.)

MILLER, J. The title of the plaintiff to the bonds in controversy rests upon the prior ownership of ten bonds of the Peoria and Oquawka railroad company. This company was reorganized into the Toledo, Peoria and Wabash railroad company, and upon certain payments being made, the holders of the ten first mentioned bonds became entitled to receive the sixteen bonds of the latter company. The ten bonds had been hypothecated for a loan to one Camp, who wrongfully hypothecated said bonds to the Union Mutual insurance company for a loan to him of $5,000; and the sixteen bonds were retained by the railroad company until the ten bonds should be surrendered under an agreement to deliver the same to the railroad company, and in the meantime it was to pay the interest to the owners. They were held in escrow awaiting the return and cancellation of the ten bonds, and belonged to the plaintiff and another person, subject to such rights as the pledgee still retained by the hypothecation of the ten bonds. The owners had paid the assessments made on the old bonds, which was required by the agreement for reorganization. The insurance company had paid nothing, refused to pay, and made no claim for the same, and whether they had a right to dispose of the same for the payment of the money loaned thereon, is not important to determine unless the defendant had a right to purchase the same. Such right depends upon the position which he occupied to the owners. If he was the agent of the owners in reference to those bonds, or the relationship of *trustee and cestui que trust* existed between them, then any purchase which he might make in contravention of his duty was of no avail and inured to their benefit, and the defendant was liable to account for the same. Whether he was such agent or trustee is the main question to be determined, and

involves an inquiry as to the facts which bear upon that sub-
ject.    The defendant was one of the trustees to buy the road
for the benefit of the bondholders, under the plan for a reor-
ganization, and for some time was its president.    It may
well be questioned whether under these circumstances he had
a right to deal with these bonds for his individual benefit.
But aside from this, there was evidence to the effect that he
agreed to take the bonds and hold them in trust for the
original owners.    That he also paid the interest or coupons,
or gave his check for the same to them.    Although the
testimony is conflicting in reference to the agreement referred
to, yet there was sufficient evidence to justify a submission
of the question to the jury whether the defendant undertook
to perform the duties of agent or trustee, and assumed to act
in behalf of the owners in regard to the bonds, and to war-
rant the finding of the jury, that he acted as such agent or
trustee.    If he thus assumed to act on the behalf of the
owners, he is estopped from claiming that he acted for his
own benefit.    If an agent without the knowledge of his
principal assumes to act, the principal is entitled to all the
benefits to be derived from such action.    So also a trustee
cannot profit by dealing with the property of the *cestui que
trust*.    The defendant had no right to act on his own behalf
so long as he was a trustee or agent, and if he did so act,
when upon demand he refused to surrender the bonds he had
obtained, his act was wrongful and tortious.

The fact that the new bonds were not issued until after
the defendant had purchased the old bonds from the insur-
ance company, is not important.    It was enough to maintain
the plaintiff's claim that the owners were entitled to the
bonds at the time of the reorganization of the company, by
payments of assessments afterwards, and by their agreement
with the company, as against the defendant; and that the
defendant agreed to act on their behalf.    Nor can it be
claimed that the agreement was never carried into effect, or
acted upon, for as we have seen there was some evidence
tending to show that the defendant did act, and as he

obtained possession of the bonds, it is to be assumed that it was under the agreement, and not otherwise. If such was the fact, then the plaintiff was entitled to maintain an action to recover the value of the bonds.

It is urged that the cause of action was not set forth in the complaint, which was in tort; and that a recovery was allowed on contract. The action was not on the agreement, but for the tortious act of the defendant after the agreement was made. The complaint alleged ownership of the bonds by the plaintiff, their possession by the defendant, a demand for their return, and a refusal of the defendant to deliver, which constituted a conversion. These allegations established a cause of action, and any statements in the complaint beyond this were not material. The defendant had obtained possession of the bonds while he was trustee or agent of the plaintiff, and held them as such, and when he refused to deliver them on demand, there was a conversion for which he was liable. The case considered, bears no analogy to one where the testimony shows that there was no tortious act, as when the complaint alleges an agreement to deliver up securities, a demand therefor, and a refusal and conversion, and there is a breach of the contract merely. *Austin* v. *Rawdon* (44 N. Y., 63), or when the complaint alleges too much, as where an action on contract is stated, and an allegation of conversion also made, and it is held the plaintiff may recover on the contract, and the tort be disregarded. *Conaughty* v. *Nichols* (42 N. Y., 83.) These authorities have no application to a case where possession of property, by a trustee as such, is obtained, and there is a refusal to deliver on demand to the *cestui que trust.* There was no error on the trial in refusing to dismiss the complaint, in the admission of evidence, or in the submission of the case to the jury by the judge. The requests to charge which were refused were fully covered by the charge as made, and there was no valid exception in this respect.

The testimony as to the value of the bonds was also sufficient to submit to the jury upon that question. The discus-

sion had covers all the points and suggestions made which
it is material to consider, and leads to the affirmance of the
judgment.

All concur, except RAPALLO, J., absent.

Judgment affirmed.