JOHN W. JASPER, Plaintiff and Respondent, *v.* ARTHUR H. HAZEN, Defendant and Appellant.

**1. Trustee; Intent to Defraud; Involuntary Trustee.**

When one receives a deed absolute in form, but intended as security only, and with a promise to reconvey upon payment, he becomes trustee for the grantor to the extent of grantor's interest therein. Likewise, when one receives property as security only, and under a promise to return the same on certain contingencies, he becomas a trustee for the owner; and, if said promises were made with intent to defraud, and with no intent to fulfill, yet the only effect of such deception

was to render such party an involuntary trustee as defined by § 3920, Comp. Laws.

**2. Same; Plaintiff Charging Defendant as Trustee.**

When it is alleged that said property, both real and personal, had been wrongfully sold by such trustee, and that the products raised on said farm by such trustee for a period of three years had also been wrongfully sold, and action is brought to recover the value of both the property and products, the plaintiff charges such party as trustee, and cannot be heard to say that the trust was never opened, or the trust relation active.

**3. Same; Same; Plaintiff's Remedy is in Equity.**

Plaintiff's remedy in such case is in equity. No action can be maintained at law by the *cestui que trust* against the trustee while the trust remains open, unless the exact amount due the *cestui que trust* has been in some manner liquidated, and no act remains to be performed except payment.

(Opinion Filed April 1, 1890.)

*A*PPEAL from district court, Cass county; Hon. WILLIAM B. McCONNELL, Judge.

Action by John W. Jasper against Arthur H. Hazen, to recover the value of certain real estate, and of the products thereof, and of certain personal property of which plaintiff claimed to be the owner, and which it was alleged defendant wrongfully disposed of, and converted to his own use. Trial to a jury. Verdict and judgment for plaintiff. Motion for a new trial denied, and defendant appeals.

Messrs. Thomas & Davis, for Appellant: Redress for violation of trust, where the trust is still unsettled, is not obtainable by an action at law; citing Duval v. Craig, 2 Wheat. 45; Norton v. Ray, 139 Mass., 230. No action at law being maintainable, the complaint should have been dismissed; Supervisors v. Decker, 30 Wis., 624.

Messrs, Greene & Hildreth, for respondent, argued: That the pleadings and evidence showed that a trust relation was agreed upon between the parties, but was never opened; that every act of appellant was in violation of that agreement; that where the property of a *cestui que trust* is transferred by the trustee to a *bona fide* purchaser without notice of the rights of the *cestui*

*que trust* the latter has an action at law against the trustee for damages commensurate with the value of the property so wrongfully sold; citing Mercier v. Hemme, 50 Cal. 607; Smith et al. v. Frost, 70 N. Y., 69; May v. Le Claire, 11 Wall. 217; Oliver v. Piatt, 3 How. 653. If a trustee does a wrongful act with reference to the trust property he consents to be treated as a trespasser or a debtor, at the election of his *cestui que trust.* Gunther v. James, 9 Cal. 644.

If a trustee disposes of trust property he may be sued in damages; 31 Cal. 24.

Where the grantee has wrongfully conveyed the property, the grantor may claim the proceeds of the sale or the value of the land at the time when the grantor's right to have it restored to him is established. Mecham v. Forrester, 52 N. Y., 277; Enos v. Sutherland, 11 Mich. 538; and an action at law may be maintained for money had and received. Van Dusen v. Worrell, 4 Abb. Ct. of App. 473; Jones on Mort., vol. 1, § 341. Where fraud is charged against the trustee courts of law and equity have concurrent jurisdiction. Snell's Prin. of Eq., 384; Flint & P. M. Ry. Co. v. Gorden, 41 Mich. 420; Lewis v. Cocks, 23 Wall. 466; Allen v. Waldo, 47 Mich. 516; Kerr on Fraud and Mistake, 44.

BARTHOLOMEW, J. The facts will be best understood from a summary of the pleadings. The complaint states that on March 20, 1885, plaintiff was the owner of a certain quarter section of land in Cass county which was free from incumbrance except two mortgages in favor of the Northwestern Trust Company for $1,100; that on that date plaintiff was arrested on a criminal charge, and bail for his appearance before the examining magistrate was fixed at $500; that defendant agreed with plaintiff that, if plaintiff would execute to defendant a warranty deed of his said land, he (defendant) would furnish said bail, and, upon plaintiff's appearance in compliance with said bail-bond, defendant would reconvey said land to plaintiff; that plaintiff relied upon such agreement, and executed to defendant a warranty deed of said premises, but for no other consideration, and upon no other condition, than the foregoing; that defendant did furnish such bail, and plaintiff duly appeared and exonerated the

same; that, upon his hearing before the magistrate, plaintiff was held to answer to the district court, and his bail fixed at $1,500, and in default thereof plaintiff was committed to the county jail of Cass county; that thereupon plaintiff demanded of defendant a reconveyance of said land, which defendant declined to make, but promised to meet plaintiff further in regard thereto; that about April 20, 1885, the defendant visited plaintiff in jail, as aforesaid, and knowing that plaintiff could not be discharged in time to work said land, which constituted plaintiff's farm, he agreed with plaintiff that, if plaintiff would, during his imprisonment, let defendant have possession and charge of said farm, and the personal property thereon, and leave the deed in his hands, and permit him, as agent or trustee for plaintiff, to have charge of all his business, including the working of said farm, with the teams and machinery thereon belonging to plaintiff, he (defendant) would make more money for plaintiff than could be made by renting the farm to others, and that he (the defendant) would cause to be paid off and discharged the mortgage thereon, and would reconvey the same to plaintiff when plaintiff should be released, and, after deducting a reasonable sum for his services, would surrender to plaintiff all the said perfonal property, and all the proceeds realized by him, as such agent or trustee from said business, and account to plaintiff for all his doings in the premises; that plaintiff believed defendant was acting in good faith, and by reason of said representations, and for no other consideration, assented to allow said deed to remain in defendant's possession, and to let defendant have possession of the farm and personal property thereon, and gave to defendant the entire management of his business during his imprisonment; that in June, 1885, plaintiff was convicted and sentenced, and imprisoned under said sentence until March 16, 1888; that, in the spring of 1885, defendant took possession of said farm, and used the same until the fall of 1887, when he conveyed it away by warranty deed, and wrongfully, and in violation of his trust, converted the proceeds to his own use, and that all the promises and agreements made by defendant relative to the reconveyance of said land were made and given with intent to cheat and de-

fraud plaintiff, and to enable defendant to convert the same to his own use; that said farm was worth $2,100 over and above the incumbrances; that plaintiff endeavored at different times during his imprisonment to ascertain from said defendant the condition of said farm, and the crops thereon, but defendant failed to give any information respecting the same; that after his discharge, and before action brought, plaintiff demanded of defendant an accounting and settlement of his transactions relative to said farm, and demanded a reconveyance of said farm to him, or the proceeds of the sale thereof, all of which defendant refused to render. The second cause of action renews all the agreements and pledges of defendant as set forth in the first count, and alleges that by reason of said pledges, and for no other consideration, he permitted defendant to take charge of all his affairs, including the working of the farm, relying upon his promise that he would redeliver to plaintiff all of said personalty, after deducting a reasonable amount for his services; that he would pay plaintiff the profits realized from the use of the farm, and his management thereof, as trustee; that, during the farming seasons of 1885, 1886 and 1887, defendant had the use and charge of said farm, and also stock and machinery thereon, of the aggregate value of $1,275; that the profits realized from said farm over and above the necessary expenses incurred amounted to $3,600; that prior to plaintiff's discharge, and contrary to, and in violation of, his said trust, and with intent to cheat, and defraud plaintiff, defendant sold and disposed of said personal property, and did unlawfully and wrongfully sell, dispose of, and convert to his own use the products and profits realized and raised from said farm; that demand was duly made upon defendant for the sum so converted and payment refused. The third count is for the conversion of a note.

The answer denies that the deed was given to secure liability on the bail-bond, and sets up that, when plaintiff applied to defendant for bail, defendant refused to take said land as security, but offered to buy the land, and give plaintiff $500 over and above all incumbrances, except $70 of accrued interest—the $500 to be held to secure the liability on the bail bond; that plaintiff accepted this proposition, and executed the deed accordingly, and to

secure the defendant against the accumulated interest, plaintiff gave defendant a bill of sale of a yoke of oxen, which defendant agreed to reconvey on payment of said $70. The answer then states the payment of the $500 on plaintiff's orders, and according to his directions; alleges that the land was not worth more than $500 over and above the incumbrances assumed, and that on April 16, 1885, defendant conveyed an undivided one-half interest in said land to Emmett E. Hazen for $300. The answer to the second cause of action states that on April 20, 1885, plaintiff sold and transferred the personal property to defendant in consideration that defendant would pay off the incumbrances thereon, which defendant did; alleges the value of said property to have been $300; and denies that any profits were realized from said farm, in the seasons of 1885, 1886, and 1887, over and above the cost of management and working the same. The third count is denied, except the demand.

When the jury was called, and before any evidence was introduced, defendant objected to any evidence under the complaint, for the reason that it appeared on the face thereof that the action was for damages growing out of a breach of trust which was still open, and no action at law would lie until the trust was closed, and a definite amount fixed by an accounting, either by the court or parties. The objection was overruled, and the point saved. After the testimony was closed defendant requested the court to treat the case as an equity case, and submit to the jury such interrogatories as were deemed proper to aid the court in finding the facts, and that the whole case be not submitted for a general verdict. This was also denied, and the point saved. The case was given to the jury by a general charge, and verdict returned for plaintiff. In his objections to judgment and motion for new trial, and on all possible occasions, defendant presented the point that this was an equity case, and could not be submitted to a jury for a general verdict; and that is the first point requiring our attention.

Plaintiff swears that defendant was to pay his attorney's fees, (no amount being fixed,) and was to pay incumbrances on land and on personalty, and was to hold both real and personal property as security for such advances, but was to repay him-

self from proceeds of crop. Defendant was also to have a reasonable sum for services. The learned counsel for respondent contend with much earnestness that this presents a case where one, for the purpose of getting property in his possession, fraudulently pretended to assume the position of trustee, and that, having obtained possession of the property, he proceeded to carry out his original fraudulent design, and wrongfully and unlawfully converted the property, and that an action at law will lie as for deceit. The point is not free from difficulty, and is somewhat involved on authority. While plaintiff asks a money judgment only, yet his whole complaint is based upon an accounting; and it is plain no recovery can be had without such accounting. If the deed, absolute on its face, was in fact held by defendant as security, plaintiff had the right to establish such fact by parol, and the fact once established made defendant a trustee; and the fact that defendant acted in bad faith or fraudulently in inducing plaintiff to leave the deed in his hands, instead of defeating such trusteeship, would, in and of itself, constitute defendant a trustee. § 3920 Comp. Laws. Likewise as to the personalty. If defendant received the same under the agreement, as plaintiff alleges it was made, then clearly he was a voluntary trustee, under § 3912, id. If, on the other hand, defendant's object was to defraud, then he became an involuntary trustee under said § 3920. Under any theory of plaintiff's complaint or proofs, defendant held the property both real, and personal, in trust. By seeking to recover the net value of the products raised on the farm for three years by defendant, plaintiff insists on holding defendant to the duties and responsibilities of a trustee. Plaintiff's testimony also shows that defendant advanced money for his benefit, and agreed to pay off incumbrances. Plaintiff is not, therefore, in a position to say that the trust never was opened, or the trust relation active. A trustee is held to the utmost good faith in all dealings with the trust property. He is bound to the *cestui que trust* for the payment of every farthing properly due, as proceeds or products of trust property; and a trustee *ex maleficio*, which is simply the involuntary trustee of our Code, is not different in this respect.

It is contended, however, that there has been a fraudulent breach of the trust by a conversion of the trust property, and that the value thereof may be recovered in an action at law against the trustee. This was done in Smith v. Frost, 70 N. Y. 65. A careful analysis of that case shows, however, that the defendant was at most a naked trustee, and that when demand was made upon him for the trust property there remained nothing to be done except the simple act of delivery. No question of redemption, or of accounting, or of adjustment of any kind, could possibly enter into the case. In Bridge Co. v. Van Etten, 36 Mich. 210, it was held that an action at law was properly brought against corporation officers, after they had ceased to be such, for money of the corporation wrongfully converted to their own use. The court say: "Officers of a corporation undoubtedly act in a fiduciary capacity, and may be called to account in equity as trustees. * * * But when they have ceased to be officers, and the only complaint made against them is of an appropriation of the corporate funds to their own use, and no discovery is sought, the reasons for seeking the aid of equity which commonly exist in cases of breach of trust are wholly wanting." In that case there were allegations that the defendants fraudulently, and with intent to cheat and defraud, procured themselves to be made officers. But the court say this is of no force or value. Lathrop v. Bampton, 31 Cal. 17, was an action in equity brought on behalf of the *cestui que trust* against the executor of the trustee, whose estate was insolvent; and plaintiff prayed a decree that defendant be required to pay over the full amount of the trust fund before paying any amount to general creditors. But, as neither the trust fund, nor any of the proceeds thereof, could be traced into the hands of the executor, the court held that the remedy of the plaintiff was at law, as a general creditor, and on rehearing placed their decision upon the ground that the bill could not be construed as a bill for an accounting. Mercier v. Hemme, 50 Cal. 607, and Frue v. Loring, 120 Mass. 507, have a bearing in the same direction. In some of the foregoing cases, expressions are found broad enough to fully sustain respondent's contention; but the cases did not call for such unqualified state-

ments, and we are satisfied the authorities do not warrant them. The elementary principles governing cases of this character will be found fully stated in Pom. Eq. Jur. §§ 1079, 1080, 1421. Johnson v. Johnson, 120 Mass. 466, was an action at law by a *cestui que trust* against the trustee's executor to recover the amount due the *cestui que trust* as shown by the final account of the trustee duly filed and allowed. The action was sustained, the court saying: "It is well settled that a *cestui que trust* cannot bring an action at law against a trustee to recover for money had and received while the trust is still open; but when the trust has been closed and settled, the amount due the *cestui que trust* established and made certain, and nothing remains to be done but to pay over money, such an action may be maintained." In Davis v. Coburn, 128 Mass. 382, it is said: "The plaintiff seeks to recover of the defendant as trustee under an express trust to invest and account for the proceeds of certain gold dust sent to him by the plaintiff's intestate. This trust was found by the judge who presided at the trial in the superior court to have been created and accepted. But it appeared in evidence that when the gold dust was received by the defendant the plaintiff's intestate was indebted to the defendant, and that no account has been rendered of the trust, and no settlement of the amount due under it has been made, either by computation or by adjustment. Under these circumstances, the only remedy for the *cestui que trust* is by a bill in equity. An action at law does not lie in his favor against the trustee while the trust is open." In Norton v. Ray, 139 Mass. 230, the trustee of real estate conveyed the land contrary to the terms of the trust, and the *cestui que trust* sued at law for the value of the land so conveyed. The court held that plaintiff's only remedy was in equity, and that the case did not come within the decisions allowing actions at law for a liquidated sum due a *cestui que trust*. Wingate v. Ferris, 50 Cal. 105, has many points in common with this case. Plaintiff was the owner of a steamboat, claimed to be worth $10,000, which had been seized on legal process, and was about to be sold for a debt of $300. Defendant agreed to bid the property in, and hold it in trust for plaintiff, and allow plaintiff to redeem on paying the sum bid, with interest, and reason-

able compensation for defendant's services in that behalf. Defendant purchased the property for $1,200, and in violation of his trust sold it, whereby plaintiff alleged he had been damaged in the sum of $9,027, and brought action therefor at law. Defendant denied that he bought the property in trust for plaintiff. The case was tried to a jury without objection by either party. Subsequently the trial court granted a new trial, and in so doing used the following language, which was approved by the supreme court on appeal from the order granting the new trial: "The remedy of the plaintiff against the defendant is not in law  *  *  *  *  * but in a court of equity;  *  *  *  *  * and the remedy is to redeem the property if it is in the hands of the trustee, or to compel the trustee to account for it if he has sold it to a *bona fide* subsequent purchaser without notice.  *  *  * Defendant, it appears, sold the property. No action has been brought to set aside the sale. Plaintiff  *  *  * complains of the conduct of his trustee, but has not availed himself of his remedy, to compel him to account to him concerning the trust." In Heyland v. Badger, 35 Cal. 405, plaintiff mortgaged certain hay to defendant. Defendant, without any attempt at foreclosure, sold the property, and the mortgagor sued at law for the value of the hay, without tender of the amount secured by the mortgage, and the court held that the action would not lie, and that plaintiff's only remedy was in equity, to redeem. See also, Sandfoss v. Jones, 35 Cal. 481; Judd v. Dike, 30 Minn. 380, 15 N. W. Rep. 672. In this case there has been no offer made to reimburse defendant for the money plaintiff swears was paid and to be paid by defendant for plaintiff's benefit, and for which the property was held as security; no offer made to refund the amount of incumbrances on the property that was paid by defendant; no tender of any sum by way of compensation to defendant for his services in and about the trust property; no ascertainment or pretended ascertainment, of defendant's expenditures in raising the crops. But plaintiff assumes a balance, and sues the defendant at law in an action that can only be determined on plaintiff's theory after a full accounting by the trustee on all these points. No case will be found sustaining this

practice. Plaintiff's remedy is in equity. A trustee cannot be sued at law while the trust remains open, unless the exact amount due the *cestui qui trust* has been, in some manner liquidated, and no act remains to be performed except payment. For the error in refusing to try the case as an equity case, and in submitting it to a jury for a general verdict the judgment must be reversed, and a new trial ordered in accordance with this opinion. All concur.