Levi Hussey, Respondent, *v.* De Witt C. Flanagan, Appellant.

Contract — conversion — question of fact — presumption as to value of stock — agreement between plaintiff and defendant by which latter was to sell certain interests of former and receive purchase price as his agent or trustee — refusal to deliver securities received in payment — when action for conversion will lie — condition in contract that plaintiff should be entitled to payment only if negotiations for sale then pending were consummated — erroneous holding as matter of law that securities were product of negotiations pending at time of agreement — no presumption that par value of capital stock is its actual value.

. 1. Where, upon examination of certain contracts, it appears clear that their meaning was that, as between the plaintiff and defendant, the latter was authorized to sell and convey certain interests and rights which belonged to the former and to receive therefor in the shape of securities a certain specified portion of the purchase price as the agent and trustee of the plaintiff, no accounting being necessary to fix the amount of said portion, plaintiff became entitled to his specified portion thereof when received by the defendant, who, when he repudiated his agency and trusteeship and refused to deliver to plaintiff the securities which belonged to him, became guilty of conversion, and plaintiff may maintain an action therefor.

2. Furthermore defendant's agreement to receive and pay over to plaintiff certain securities which might be received by him on the sale of plaintiff's rights may be regarded as an equitable assignment which, when the securities were actually received, attached thereto, and gave to plaintiff such a right and interest in the securities that

he could maintain an action for conversion against defendant when the latter withheld the same.

3. Where it was expressly provided in the agreement that plaintiff should be entitled to a share of securities only in the event that the negotiations then pending were consummated, and it appears that, at the time, the parties regarded the contract with the purchasers as inchoate and that thereafter there was a cessation of proceedings under this contract and correspondence which might permit the inference of a termination of negotiations, followed by a new agreement and a second cessation of operations and a third agreement referring to the second and under which defendant received a different amount of securities than provided for in the original agreement, it cannot be said as matter of law that the last agreement was a continuation and consummation of the first, but it was for a jury to say whether the original agreement had been fully, completely and in good faith terminated and ended or whether operations under it had merely sunk temporarily into a condition of dormant suspension from which they were resurrected and put into new activity and final consummation by the second agreement as continued and modified by the third.

4. While there undoubtedly is a presumption that fixed obligations of an apparently solvent and going concern are worth par, no such presumption exists in respect of the shares of ordinary capital stock, the rule being directly to the contrary.

*Hussey* v. *Flanagan*, 206 App. Div. 187, reversed.

(Argued November 30, 1923; decided December 27, 1923.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered July 2, 1923, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

*Irwin Untermyer, Isadore Shapiro* and *Clarence V. Opper* for appellant. Plaintiff's right to recover under the contract, which is the basis of his claim, and according to the allegations of his complaint, depends upon the successful consummation of the negotiations pending between defendant and August Belmont & Co. in 1906. Plaintiff failed to introduce any evidence whatsoever showing that these negotiations had been consummated, and his counsel admitted that he could not. The com-

plaint should, therefore, have been dismissed as matter of law. Defendant's proof showed that all the securities received by defendant were received as the result of subsequent and altogether different negotiations commenced three years later, so that, in any aspect of the case, it was reversible error to direct a verdict in favor of plaintiff. (*Archer* v. *Eckerson*, 10 App. Div. 598.) The complaint should have been dismissed. The action purported to be in conversion. No cause of action in conversion was either pleaded or proved, and the allegations of the complaint and the proof at the trial show that plaintiff had no title to the securities claimed to have been converted. Further, the complaint and the proof show that there were no specific securities appropriated to the contract to the possession of which plaintiff was entitled. (*Procter & Gamble Co.* v. *Peters, W. & Co.*, 233 N. Y. 97; *I. & G. Trust* v. *Tod*, 170 N. Y. 245; *Johnson* v. *Blaney*, 198 N. Y. 312; *Ellis* v. *F. & S. Bldg. Co.*, 187 App. Div. 481; 230 N. Y. 565; *Baldwin* v. *Barrows*, 47 N. Y. 199; *Reynolds* v. *Searle*, 186 App. Div. 202; *Chase* v. *Barrett*, 47 Paige, 148; *Porter* v. *McClure*, 15 Wend. 187; *Anderson* v. *Read*, 106 N. Y. 333.) There was no proof of the value of the securities alleged to have been converted, at the time of their alleged conversion, and plaintiff was entitled, therefore, to a judgment for nominal damages at most. (*Griggs* v. *Day*, 158 N. Y. 1; *Warren* v. *Stikeman*, 84 App. Div. 610; *Virginia* v. *West Virginia*, 238 U. S. 202.)

*Richard T. Greene* and *John L. Feeny* for respondent. Then egotiations pending between the defendant and August Belmont & Co. on March 20, 1906, were consummated and the plaintiff sustained the burden of proof in this connection. (*Woolsey* v. *Tunke*, 121 N. Y. 87; *Nicoll* v. *Sands*, 131 N. Y. 19.) Defendant's refusal to deliver to the plaintiff the securities in question constituted a conversion thereof. (*Smith* v. *Frost*, 70 N. Y. 65; *Doyle* v. *Burns*, 123 Iowa, 488; *Hardin* v. *Robinson*,

178 App. Div. 724.)   Plaintiff made out a *prima facie* case as to the value of the money and securities converted, which was not rebutted by defendant.   Defendant did not request to go to the jury on the question of damages. (*Weigley* v. *Kneeland,* 18 App. Div. 47; *Whitehead* v. *Heidenheimer,* 57 App. Div. 590; *Griggs* v. *Day,* 136 N. Y. 152; *Cothran* v. *Hanover,* 8 J. & S. 401; *Decker* v. *Matthews,* 12 N. Y. 313.)

HISCOCK, Ch. J.   This is an action to recover for the alleged conversion by defendant of certain securities to which the plaintiff claims that he was entitled.

The controversy springs out of a project for the construction, financing and completion of what was known as the Cape Cod Ship Canal.   The plaintiff, defendant and one Dodge in a manner not very definitely disclosed had become interested in this project and apparently had had various agreements amongst themselves as to their respective shares in the fruits which might be realized from the scheme.   For the purpose of reducing these agreements to a final and definite form they executed a written contract in March, 1906, which was to define their rights.   This agreement is so important in determining the present controversy that it will be necessary to quote or summarize it with some detail.

It recited that the parties " had various agreements amongst themselves as to the respective shares of the stocks, bonds and profits which they should receive from any sale " of the above-mentioned ship canal; that " negotiations are now pending and almost completed between " the defendant and responsible parties who were expected to finance the construction of the canal and then it was " agreed that in the event (and only in that event) that the negotiations now pending between DeWitt C. Flanagan and the parties hereinbefore indicated, for the financing and construction of the Cape Cod Ship Canal shall become consummated, that, in lieu of

the compensation and share which the said Hussey was entitled to receive under said prior contracts, he shall receive from the said DeWitt C. Flanagan, *pro rata* as and when the securities shall be paid to the latter by the purchasers or builders of said Canal or otherwise; but in no event unless and until the securities are so received by said Flanagan, One hundred thousand dollars of the full paid capital stock of the Boston, Cape Cod and New York Canal Company, and Fifteen thousand dollars par value of a total issue of not exceeding $6,000,000 of the first mortgage bonds of said Canal Company, from and out of the securities so received and not otherwise." Provision was further made for the organization of a holding compnay, which is not material, and that on payment to Hussey of the stock and bonds above provided for they should " be accepted by him and be in full payment and discharge of any and all claims, contracts and agreements which he may have or may have had " with either of the other parties to said agreement. Flanagan on his part agreed " to make delivery of said stock and bonds to said Levi Hussey, his legal representatives or assigns at the times hereinafter specified, out of the securities received by him and not otherwise."

Several years later the defendant received from August Belmont & Company, who had become the purchasers and owners of the rights originally possessed by the individuals hereinbefore referred to in this project, and in payment therefor, a large amount of bonds and stock, but he refused to deliver or pay over any thereof to the plaintiff and there then resulted this action for conversion of what plaintiff claimed was his share. Aside from details of the written contracts between defendant and Belmont & Company under which the latter secured their rights from defendant and about which there is no dispute it is important to be noted that the transaction was regarded and described as a sale by defendant to Belmont & Company of various rights, options, franchises, etc.

Out of the action which has been brought and its method of trial there arise three important questions. These are the ones, *first*, whether plaintiff had any such interest or rights in the securities paid to defendant that he can maintain an action for conversion; *second*, whether as matter of law the securities received by defendant were so received in consummation of the negotiations described as pending for the financing and construction of the Cape Cod Ship Canal at the time the agreement between plaintiff, defendant and Dodge was executed, because it was in that event only that the defendant became obligated to give any securities to plaintiff; and *third*, whether the trial court erred in holding that there is a presumption that the par value of capital stock is its actual value.

The first question which we have stated may not be entirely free from debate but we have reached the conclusion that under the agreement between the parties from which we have quoted the plaintiff did have such a right in the securities received by defendant, assuming that his claim was sustained in other respects, that an action for conversion will lie. As fully appears by the agreement from which quotations have already been made, plaintiff, defendant and another were interested in the plan to construct the canal and their respective interests in the stocks, bonds and profits which should be received and accrue from said project had already been recognized by various agreements. Under these circumstances plaintiff in substance conferred upon defendant the right to negotiate for the construction of said canal and the sale of the rights involved therein and then it was provided that in case certain negotiations therefor were consummated plaintiff was to receive from defendant " *pro rata* as and when the securities shall be paid to the latter by the purchasers or builders of said Canal or otherwise; but in no event unless and until the securities are so received by said Flanagan," certain securities, " from and out of the

securities so received and not otherwise " and Flanagan agreed " to make delivery of said stock and bonds to' said Levi Hussey   *   *   *   out of the securities received by him and not otherwise." And as has already been pointed out defendant had by virtue of the authority conferred upon him proceeded on the theory of selling to Belmont & Company rights which had been acquired in the canal project and received in return therefor certain securities.

It seems to us reasonably clear that the meaning of all of these contracts was that as between the plaintiff and defendant the latter was authorized to sell and convey certain interests and rights which belonged to the former and to receive therefor a certain specified portion of the purchase price as the agent and trustee of the plaintiff. Of course if this is so, no accounting being necessary to fix the amount of said securities, plaintiff became entitled to his specified portion thereof when received by the defendant and the defendant when he repudiated his agency and trusteeship and refused to deliver to plaintiff the securities which belonged to him became guilty of conversion. (*Smith* v. *Frost,* 70 N. Y. 65; *Doyle* v. *Burns,* 123 Ia. 488, 497.)

We think that the plaintiff's right to recover in conversion under the various contracts might be sustained upon another ground. We think that defendant's agreement to receive and pay over to plaintiff certain securities which might be received by him on the sale of plaintiff's rights might be regarded as an equitable assignment and that when the securities were actually received this assignment attached thereto and gave to plaintiff such a right and interest in the securities that he could maintain an action for conversion against defendant when the latter withheld the same. (*Fairbanks* v. *Sargent,* 117 N. Y. 320; *Hinkle Iron Co.* v. *Kohn,* 229 N. Y. 179; *Barnes* v. *Alexander,* 232 U. S. 117.)

We then come to the question whether these securities

were received by defendant under and in consummation of negotiations which were pending at the time the contract between plaintiff, defendant and Dodge was executed, for as has been stated it was in said agreement expressly and plainly provided that plaintiff should be entitled to a share of securities only in the event that the negotiations then pending were consummated. The trial judge by his direction of a verdict held as matter of law that the securities were the product of the negotiations then pending and in this respect we think he erred. We think it was a question of fact rather than one to be decided as a matter of law.

The only negotiations shown to have been pending at the time the agreement of these parties was executed for the financing or consummation of the canal project in which they had become interested were those pending with Belmont & Company. An agreement had been executed between the latter and defendant in February, 1906, that is, the month before the agreement between these parties was executed. But from a letter which appears in the record modifying this agreement and from the fact that no negotiations could have been referred to " as pending " other than those with Belmont & Company the parties apparently regarded the contract with the latter as still in the category of an inchoate arrangement. There certainly was a cessation of proceedings under this contract, and correspondence between Belmont or his representatives and defendant or his representatives on its face permitted the inference that the negotiations represented by and embodied in the agreement referred to had been terminated. Moreover, in 1907 a new agreement in form was made between Belmont & Company and Flanagan for carrying out and consummating the project of the canal but again operations under that agreement apparently were stopped by the panic of 1907 and in 1909 another agreement was made which, however, referred to and was intended to

make certain modifications in the agreement of 1907 and under which defendant received a different amount of securities than provided for in the original agreement of 1906.

In view of these circumstances we do not think that it can be said as matter of law that the agreement of 1909 under which defendant received the securities was a continuation and consummation of the agreement of 1906, but that it was for a jury to say whether the agreement of 1906 had been fully, completely and in good faith terminated and ended or whether operations under it had merely sunk temporarily into a condition of dormant suspension and from which they were resurrected and put into new activity and final consummation by the agreement of 1907 as continued and modified by the agreement of 1909.

. This brings us to the final question. The securities for alleged conversion of which plaintiff recovered consisted of bonds and stock issued to a construction company for its services in constructing the canal. There was no evidence that the stock was worth par but the trial court held that there was a presumption to this effect. While there may be some doubt whether defendant's counsel properly raised a question as to the correctness of this view we think that it is desirable to consider it and thus prevent the possibility of error on another trial.

While there undoubtedly is a presumption that fixed obligations of an apparently solvent and going concern are worth par (*Western R. R. Co.* v. *Bayne,* 75 N. Y. 1, 5; *Booth* v. *Powers,* 56 N. Y. 22, 29; *Met. Elev. R. Co.* v. *Kneeland,* 120 N. Y. 134, 144), we know of no such presumption in respect of the shares of ordinary capital stock. Such a presumption would run counter to the fact a large proportion of the time and presumptions are supposed to rest upon and express the results of actual experience. Accordingly, as would be

expected, we find the rule settled directly to the contrary of what was held. (*Griggs* v. *Day*, 158 N. Y. 1; *Virginia* v. *W. Virginia*, 238 U. S. 202; Cook on Corporations [6th ed.], vol. 2, sec. 581; Sutherland on Damages [4th ed.], vol. 4, sec. 1113.)

The judgment appealed from should be reversed and a new trial granted, with costs to abide event.

HOGAN, CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgment reversed, etc.