CHARLES E. HENRY vs. HENRY B. KOPF.

Third Judicial District, Bridgeport, October Term, 1925.

WHEELER, C. J., CURTIS, KEELER, MALTBIE and HAINES, Js.

It is an essential element of a cause of action for deceit, arising out of a contract of sale, that the vendor knew of the falsity of his misrepresentation; but in an action to recover damages for rescission, the vendor's knowledge is immaterial, it being sufficient if it appears that the misrepresentation, though innocently made, was a material one.

In the present case, which was an action, based upon the rescission of a sale to the plaintiff of worthless stock in a motion-picture corporation, to recover as damages the money paid to the defendant, the plaintiff alleged and testified that he was induced to purchase the stock in reliance upon the defendant's representation that the corporation owned a large studio in the city of New York, to complete the payments upon which his money and that of other subscribers, including an investment of $55,000 by one H, would be devoted. In his answer, the defendant admitted that the substance of these alleged statements was untrue, but

Henry *v.* Kopf.

denied that he ever made them. The trial court nonsuited the plaintiff. *Held* that upon the pleadings and evidence the jury might reasonably have found that the plaintiff had established the essentials of his cause of action and that the judgment granted by the trial court was erroneous.

The plaintiff's offer to prove that he was unable to secure a loan upon his stock from a trust company, was irrelevant and inadmissible under an allegation that the defendant had represented that the corporation itself would at any time advance eighty-five per cent. of the amount of his investment.

Since the nature of the plaintiff's cause of action did not require him to prove a fraudulent intent, evidence that the defendant had, at about the same time and under similar circumstances, misrepresented the stock to other persons, was immaterial and properly excluded by the trial court.

If the plaintiff had been suing upon a cause of action for deceit, *it would seem* that such evidence would have been admissible.

To prove the worthlessness of the stock, the plaintiff offered, and the trial court excluded as hearsay, the testimony of an official of the New Haven chamber of commerce, whose knowledge upon the subject was derived solely from a written report submitted to him, at his request, by a national detective agency. *Held* that there was no error in the ruling of the trial court.

To prove the market value of the capital stock of a corporation, standard, accredited price-current lists and market reports, including those published in trade journals or newspapers which are accepted as trustworthy, are admissible in evidence as an exception to the hearsay rule.

There is no presumption that the shares of ordinary capital stock of a corporation, as distinguished from the fixed obligations of an apparently solvent and going concern, have a value of par.

Argued October 30th—decided December 23d, 1925.

ACTION to recover the purchase price of stock alleged to have been sold under misrepresentations affecting its value, brought to the Superior Court in New Haven County and tried to the jury before *Booth, J.;* the court nonsuited the plaintiff and from the denial of his motion to set aside the judgment entered thereon, the plaintiff appealed. *Error and new trial ordered.*

*Charles S. Hamilton* and *Morris M. Wilder,* for the appellant (plaintiff).

*Michael J. Quinn*, for the appellee (defendant).

CURTIS, J. The first count alleges, in substance, that the defendant entered into a course of dealings with the plaintiff extending over a considerable period, in which the defendant sought to sell to the plaintiff certain stock of the Houdini Picture Corporation, and made therein certain material misrepresentations of fact to the plaintiff, and thereby fraudulently induced the plaintiff to purchase one hundred and twenty-five shares of such stock at $10 each; that said shares of stock were of no value; that the plaintiff, upon discovery of the worthless character of the stock, made demand of the defendant to return the money so paid him and offered to return the certificates of stock, but the defendant refused to accept the certificates and return the money; and in the second count the same allegations are made, in substance, in an endeavor to recover $744 paid by the plaintiff to the defendant on account of ninety additional shares of stock in the same corporation. The failure to add paragraph five of the first count as a part of the second count was not claimed by either party in the trial court to make the second count differ in substance from the first. On a new trial, an amendment may make the two counts identical in cause of action.

The cause of action set forth in the first count is an action for damages for money had and received, arising from the rescission by the plaintiff of an attempted sale of stock to him by the defendant.

A cause of action for deceit and for damages based on a rescission of an agreement of sale may be based upon identical allegations, but the allegation that the vendor knew of the falsity of the misrepresentation, so essential in an action for deceit, is not essential in an action for damages based on a rescission of an

agreement of sale. A material misrepresentation in the latter case is a good ground for the action, equally whether the vendor knew it was false when made or was entirely innocent of its falsity.

We have heretofore recognized these principles of law. In *Tompkins, Inc.* v. *Bridgeport,* 100 Conn. 147, 154, 123 Atl. 135, an action to set aside a contract for misrepresentation, we say: "It is not alleged that these misrepresentations were intentionally made, but being authoritative and misleading [that is, material], it is not necessary to allege that they were intentionally false." See Williston on Sales (2d Ed., Vol. 2) p. 1569, § 624, § 632. In § 632 he discusses innocent misrepresentations as the basis for the rescission of a contract, as follows: "It is not necessary in order that a contract may be rescinded for fraud or misrepresentation that the party making the misrepresentation should have known that it was false. Innocent misrepresentation is sufficient. . . . This is often called a doctrine of courts of equity as distinguished from courts of law, and doubtless in its origin was such; but, at the present time, it is rather a distinction between a right of rescission on the one hand, whether the right is asserted in a court of equity, in a court of law, or without the aid of a court, and an action for damages on the other hand. It is, however, a modern doctrine, and though its justice and the weight of authority already in its favor make it clear that it will prevail, there is no little authority for a statement that the right of rescission cannot be established because of misrepresentation, if the misrepresentation, though false, was made with belief on reasonable grounds in its truth. It is to be remembered also that rescission presupposes a restoration of the *status quo*, and is precluded if this becomes impossible."

This action at law is based on a rescission of the

contract and is one to recover as damages the money paid to the defendant, as for money had and received. *Gasset* v. *Glazier,* 165 Mass. 473, 480, 481, 43 N. E. 193.

The plaintiff alleged that the defendant, in order to induce the plaintiff to buy the stock, made, among other material representations, the following: That the picture corporation in question "had a large picture studio in the city of New York, and that $55,000 invested by Houdini, and the plaintiff's money and other money from other subscribers to the stock, was to be used to complete the payments on said studio."

As to this representation, the defendant in his answer alleged that it is admitted "in fact that there was no studio in New York owned or nearly completed or paid for, or to be paid for, from any money of said Houdini, or of any stockholders who subscribed for said pretended shares of stock;" and the defendant denies that he ever made such statements.

The plaintiff testified that the defendant stated, in negotiating the sale, that there was being erected, in the city of New York, a picture studio, and some of the money that would be paid in would be to finance the building of this studio in New York. This representation, if made, was one of a fact material to the value of the stock. It is admitted that, if made, it was an untrue representation. The plaintiff testified how the representation was made to him to induce him to buy the stock; that he believed the representation, and was induced thereby to purchase stock.

Under the admission and the plaintiff's testimony, the jury could reasonably have found that the representation was made to induce the purchase of the stock, and that the plaintiff was thereby induced to purchase the stock.

In such a state of the pleadings and the evidence, the plaintiff was clearly entitled to have his case, at

least as to this representation, presented to the jury. He was only required to make out a prima facie case. General Statutes, § 5793.

There are other reasons of appeal because of claimed errors in the exclusion of evidence offered by the plaintiff. These we will briefly consider, as they are questions, in part at least, likely to recur on a new trial.

The complaint alleged a representation "that at any time that the plaintiff desired, he could procure a loan of eighty-five per cent. of the amount invested from the Houdini Picture Corporation." The plaintiff was asked, in substance, "Did you at any time after you had received these papers, attempt to obtain a loan on these stocks at the Orange Bank and Trust Company, West Haven"? To this question the defendant objected because not relevant to the above representation alleged in the complaint. The court sustained this objection. This ruling is obviously correct. The question should have conformed to the representation.

The plaintiff offered the testimony of one Edward DeGenaro, to the effect that he was a patient at the Allingtown hospital, with the plaintiff and other sick soldiers, and that the defendant talked with him about the purchase of stock in the Houdini Moving Picture Corporation in the absence of the plaintiff, and told him the corporation was paying twenty-five per cent. and would soon pay fifty per cent. To this testimony the defendant objected and the court excluded it. The plaintiff claimed the court erred.

In the case of *Edwards* v. *Warner,* 35 Conn. 517, we say, in substance: Evidence that the defendant has been guilty of other like frauds is never admissible for the purpose of showing his bad character and the greater probability on that account of his having committed the particular fraud charged; the cases where, for the purpose of proving a particular fraud,

evidence of other similar transactions is admissible, are confined to cases of a conspiracy to commit fraud. This ruling was reaffirmed in *Malley Co.* v. *Button,* 77 Conn. 571, 575, 60 Atl. 125.

In *McLaughlin* v. *Thomas,* 86 Conn. 252, 259, 260, 85 Atl. 370, we approved the rulings in *Lincoln* v. *Claflin,* 74 U. S. (7 Wall.) 132, 138, and in *Cary* v. *Hotailing,* 1 Hill (N. Y.) 317, and in *Butler* v. *Watkins,* 79 U. S. (13 Wall.) 456, 464, to the effect that, "if a motive exists prompting to a particular line of conduct, and it be shown that in pursuing that line a defendant has deceived and defrauded one person, it may justly be inferred that similar conduct toward another, at or about the same time, and in relation to a like subject, was actuated by the same spirit."

If this present action involved the proof of all the essential elements of an action for damages for deceit, involving the *quo animo* of the vendor, this latter decision would seem to be controlling where relevant, but, as the discussion in the beginning of this opinion discloses, the fraudulent intent of the vendor is not an essential element in this case, and hence the evidence was immaterial.

See McKelvey on Evidence (2d Ed.) p. 189, for a caution as to the limits in which such evidence is to be confined.

The plaintiff, in spite of the following allegation in his complaint,—"5. Upon discovery of the worthless character of said pretended stock, the plaintiff made demand of the defendant and of the so-called Houdini Picture Corporation to return to him the money paid therefor, and offered to return the certificates of pretended stock in the same; but the defendant refused to refund said money and to return to him any of the money that the defendant had delivered to him for said purpose,"—evidently deemed

it an essential part of his case to prove damage to
him, and so he sought to prove that this stock was
without value or of slight value when purchased. He
produced one Lawrence H. Duncan, an assistant secre-
tary of the New Haven chamber of commerce, who
testified, in substance, that he investigated the value
of this stock by writing to the Burns Detective Agency,
and from its report could testify as to value. Upon
objection, this was excluded and the plaintiff excepted.
There was no error, as the testimony was purely hear-
say.

The plaintiff produced Robert S. Bradley, who testi-
fied that he was a vice-president of the First National
Bank of New Haven, and that he examined Moody's
Current Rating Book as to the stock. He was asked
if this was a recognized authority. Upon objection,
the question was excluded. The witness, when asked
if he could send for the book, said, "Yes," but the court
ruled that if the book was produced it would not
admit it. To these rulings the plaintiff excepted.
In these rulings the court erred. In so far as Mr.
Bradley was found to be a dealer in stocks and ac-
quainted with the market value of stocks, he was a
proper witness as to what market reports are ac-
credited as trustworthy. "It is unquestioned that in
proving the fact of market value, accredited price-
current lists and market reports, including those pub-
lished in trade journals or newspapers which are ac-
cepted as trustworthy, are admissible in evidence."
*Virginia* v. *West Virginia,* 238 U. S. 202, 212, 35 Sup.
Ct. 795.

Judge Cooley, in his opinion in *Sisson* v. *Cleveland
& Toledo R. Co.,* 14 Mich. 489, 497, speaks as follows
as to market reports: "As a matter of fact, such re-
ports, which are based upon a general survey of the
whole market, and are constantly received and acted

on by dealers, are far more satisfactory and reliable than individual entries, or individual sales or inquiries; and courts would justly be subject to ridicule, if they should deliberately shut their eyes to the sources of information which the rest of the world relies upon, and demand evidence of a less certain and satisfactory character."

The fact that the stock of a company has never been offered for sale in a market is not evidence that the stock has no value. *Doran* v. *Eaton*, 40 Minn. 36, 41 N. W. 244. Where no market value can be proved, the method of proving intrinsic value is set forth in Cook on Corporations (7th Ed., Vol. 2) § 581. There is no presumption that the shares of ordinary capital stock of a corporation have a value of par.

In *Hussey* v. *Flanagan*, 237 N. Y. 227 (142 N. E. 594), on page 235, the court says: "While there undoubtedly is a presumption that fixed obligations of an apparently solvent and going concern are worth par, . . . we know of no such presumption in respect of the shares of ordinary capital stock. Such a presumption would run counter to the fact a large proportion of the time and presumptions are supposed to rest upon and express the results of actual experience. Accordingly, as would be expected, we find the rule settled directly to the contrary of what was held." See also *Virginia* v. *West Virginia*, 238 U. S. 202, 35 Sup. Ct. 795; Cook on Corporations, Vol. 2 (7th Ed.) § 581; Sutherland on Damages, Vol. 4 (4th Ed.) § 1171.

In treating of certain exceptions to the hearsay rule, Wigmore (Evidence, Vol. 3) in § 1704, says: "A printed list of prices at which a class of goods [as shares of stock] is for sale, . . . or a printed report of the prices obtained at actual sale in an open market, may become trustworthy as far as it is intended to be consulted by all persons who care to know the

prices, and has been exposed to a test of accuracy by dealings . . . on the faith of it, and has further been in their experience found generally reliable. A price-current list or a market report which fulfils these conditions and has thus sufficed for the correct information of persons who transact commercial operations on the faith of it may well suffice for informing a court of justice. It would not be necessary that the compiler of it should have personal observation of each dealing reported or going to make up the market price reported. . . . Such standard price-lists and market reports, indorsed by trade experience, ought to be admissible on the principle of the present exception."

During the presentation of the plaintiff's case it appeared in evidence that the defendant, in dealing with the plaintiff, was acting to the plaintiff's knowledge as the representative of the H. V. Greene Company, brokers. The complaint alleges that the defendant offered the stock for sale, and the plaintiff purchased it of him, and that, on discovery of the misrepresentation, the plaintiff demanded of the defendant a return of the money paid. The defendant filed an answer which was in effect a general denial. Nowhere in the pleadings is there any suggestion that the defendant was acting as the agent of the H. V. Greene Company. In this state of the record, the defendant cannot now be heard to deny liability on that ground, whatever might have been the situation had the pleadings presented a claim of such an agency. 1 Mechem on Agency, § 1432 *et seq.*

There is error and a new trial is ordered.

In this opinion the other judges concurred.