WILLIAM F. BEHRMANN *vs.* ANNA KOVOCH BEHRMANN.

Third Judicial District, Bridgeport, October Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued November 1st, 1929—decided January 6th, 1930.

*Sam H. Platcow,* with whom, on the brief, were *Charles J. Martin* and *Walton E. Cronan,* for the appellant (plaintiff).

*Joseph N. Manfreda,* with whom was *Jacob Belford,* for the appellee (defendant).

HINMAN, J.  In 1915 the defendant was committed to the Hospital for the Insane at Middletown. After several months of treatment she was discharged as cured and for more than three years remained in good health and entirely normal. In 1919 she was again committed, remained about seven months, and was then discharged as cured, and was told that she was cured, which she believed. During the succeeding eight years she was in good health and normal in all

respects. The plaintiff and defendant intermarried April 25th, 1925, having kept company for a year and a half, during which time they were employed in the same factory, and were engaged for seven or eight months. At the time of her engagement and her marriage the defendant believed that she was cured of any insane condition and contracted the marriage in that belief and in entire good faith. She did not volunteer her prior history to the plaintiff and he did not know of it until February, 1928, when, as a result of childbirth, she suffered an attack of moronic depressive insanity and was again committed, after which the plaintiff left her and has since refused to live with her. She remained several months for treatment, but at the time of the trial was sane and normal. Moronic depressive insanity is likely to recur during times of great emotional stress and is not regarded as curable; there is a fifty per cent danger of transmittal to offspring.

Upon the facts found the trial court reached the conclusion that the defendant acted in good faith in contracting the marriage and was innocent of any fraud but believed that she was cured, and held that "the facts do not necessitate or even warrant a divorce on the ground of fraudulent contract." Claimed error in this conclusion is the sole ground of appeal. The finding, which is not attacked, is decisive adversely to the appellant's claims.

Fraud, to vitiate a marriage contract, must relate to the very essence of the marriage relation. *Lyman* v. *Lyman*, 90 Conn. 399, 403-410, 97 Atl. 312; *Gould* v. *Gould*, 78 Conn. 242, 61 Atl. 604. It must certainly be such as would afford relief from an ordinary contract. A misrepresentation made through honest error and with a bona fide belief in its truth is not fraudulent. This is obviously so when the representation was made without knowledge or culpable ignorance of its falsity,

and the belief in its truth was based upon adequate grounds. To constitute fraud by nondisclosure or suppression there must be a failure to disclose known facts and, as well, a request or an occasion or circumstance which imposes a duty to speak. *Watertown Savings Bank* v. *Mattoon,* 78 Conn. 388, 393, 62 Atl. 622; *Barnes* v. *Starr,* 64 Conn. 136, 150, 28 Atl. 908; 26 Corpus Juris, pp. 1071, 1125; 38 Corpus Juris, p. 1301.

Such knowledge or culpable ignorance, affecting the representation or nondisclosure relied on, is an essential ingredient of that fraud in the marriage contract which constitutes a ground for divorce under our statute. General Statutes, § 5280; *Gould* v. *Gould, supra,* p. 250; *Lyman* v. *Lyman, supra,* p. 402. "Such a fraud is accomplished whenever a person enters into that contract knowing that he is incapable of sexual intercourse, and yet, in order to induce marriage, designedly and deceitfully concealing that fact from the other party, who is ignorant of it and has no reason to suppose it to exist. . . . The Superior Court has power to pass a decree of divorce . . . in favor of a party . . . who has been tricked into it [marriage] by the other party . . . through his fraud in inducing a belief that he was legally and physically competent to enter into the marital relation and fulfil all its duties, when he knew he was not." *Gould* v. *Gould, supra,* p. 250.

In the present case the finding decisively negatives knowledge on the part of the defendant that the insanity with which she had been afflicted years before and from treatment for which she had been discharged as cured, might recur, or might affect children born of her marriage, or any culpability attaching to her lack of such knowledge, or circumstances imposing upon her a duty to volunteer a disclosure of those past experiences. The element of existence of present afflic-

tion at the time of the marriage, which is involved in most of the cases in which annulment or divorce has been granted for fraud in concealment of diseased mental conditions, is also lacking. *Robertson* v. *Roth,* 163 Minn. 501, 204 N. W. 329, 39 A. L. R. 1342, and note. A like element characterizes the cases based on physical disability, as in *Gould* v. *Gould, supra.* No artifice by the defendant or her family to conceal her condition is found, as in *Keyes* v. *Keyes,* 22 N. H. 553. There is not, as in *Smith* v. *Smith,* 112 Misc. 371, 184 N. Y. Supp. 134, a recent confinement in asylum and insanity prevalent among near relatives, nor, as in that case, inquiry by the prospective husband a frank and truthful answer to which would have involved disclosure of those facts. See also *Crane* v. *Crane,* 62 N. J. Eq. 21, 49 Atl. 734. The present plaintiff appears to have appreciated the significance of this deficiency as he testified that, prior to the marriage, he asked the defendant if she had ever been committed to any institution for the insane or had any attacks of insanity, and she gave a negative answer. This testimony, the court finds, was false and known to be so when given.

In *Ryder* v. *Ryder,* 66 Vt. 158, 161, 28 Atl. 1029, it was held that if the defendant was fully aware of her (syphilitic) condition she would have been guilty of fraudulent concealment in not disclosing it to the plaintiff, but since it was not found that she was so aware of it at the time of the marriage, her failure to disclose was not fraudulent. See also *Cummington* v. *Belchertown,* 149 Mass. 223, 21 N. E. 435, 4 L. R. A. 131; *Richardson* v. *Richardson,* 246 Mass. 353, 140 N. E. 73.

It appears therefore that this plaintiff has failed to establish such fraud in inducing or in connection with his marriage with the defendant as to constitute a

ground for divorce. Moreover, the conclusion of the trial court is fortified by the discretion vested in it in order that the law of divorce shall not be allowed to minister to unworthy motives or purposes. *Dennis* v. *Dennis,* 68 Conn. 186, 197, 36 Atl. 34. The attempt of the plaintiff to gain his ends by perjured testimony was alone sufficient to justify denial of a decree, in the wise exercise of that discretion. The present sanity of the defendant and the existence and welfare of the minor child are also properly to be considered.

As to the arguments relating to the present situation of the plaintiff and the considerations affecting possible future offspring, his misfortune is not different from that of every married person whose spouse is or is likely to be afflicted with insanity. It is for the legislature, in its wisdom, to declare the public policy as to dissolution of the marriage contract on that ground, and its limitations. *Robertson* v. *Roth,* 163 Minn. 501, 204 N. W. 329. This has been done, in this State, by that provision of § 5280 of the General Statutes under which a divorce may be granted in cases in which the husband or wife has become incurably insane and has been confined in a hospital or asylum for at least five years next preceding the date of the complaint.

There is no error.

In this opinion the other judges concurred.