EMMELINE M. HADDAD *v*. HERBERT T. CLARK ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued May 2—decided June 28, 1945.

*John Buckley,* with whom, on the brief, was *John B. Sullivan,* for the appellant (plaintiff).

*Samuel B. Harvey,* for the appellees (defendants).

BROWN, J. In this action the plaintiff seeks to have the court impress a constructive trust for her benefit upon land in Willimantic owned by the defendant Clara C. Clark and order it conveyed in discharge of this trust. From the court's judgment for the defendants the plaintiff has appealed. In July, 1942,

Ruth B. O'Neil was the owner of three contiguous pieces of land, one of which, with a small adjoining portion of another, is the land in question. The first piece fronted on Church Street on the west and Prospect Street on the south (100.77 feet), and it was bounded on the east in part, for a distance of one hundred feet, by the second parcel, which fronted twenty-five feet on Prospect Street, and in part by the third parcel, which was to the north of the second. The third parcel extended easterly to Bellevue Street. Bounding the second parcel on the east was property of the defendant Clara C. Clark. There was a house with a garage at the rear upon the first piece.

These tracts had been acquired by Mrs. O'Neil by three deeds of different dates. The second and third pieces and the Clark land had previously belonged to a common owner. In July, 1942, there was a bank or terrace along the westerly side of the second parcel contiguous to the first. This comprised a rather sharp turfed slope, about two feet in height along its more northerly portion, and increasing to two or three times that height as it extended southerly to Prospect Street. From the top of this bank the surface of the land extended easterly across the second parcel and the Clark property at substantially the same level and there was nothing indicating the division line between them. There were several trees along the westerly boundary line of the second parcel and a row of rhododendron bushes extended along it for from twenty to twenty-five feet near its northerly end. There was a retaining wall along the Prospect Street frontage of the first and second parcels, but there was a clear break in it at the division line, the wall in front of the second being more than a foot higher than that in front of the first and the masonry work in front of one being different in appearance from that in front of the

other. The wall in front of the second parcel continued at the same height in front of the Clark property and it had the appearance of one continuous wall. Accordingly, upon inspection the second parcel appeared to be a part of the Clark property rather than of the O'Neil property.

In 1940, the defendant Herbert T. Clark, referred to herein as the defendant, who had owned the Clark property since 1931, conveyed it to his wife Clara and they continued living there. He was a real estate broker, and Mrs. O'Neil, who had lived in the O'Neil house with her husband until 1932, when upon his death she moved to New London, listed the first and third parcels with the defendant for sale. She agreed that when the rest of her property was sold she would sell him the second parcel. He knew that it was her intention to convey to him also a small triangular piece out of the third parcel, adjoining the second parcel on the north, to straighten his north boundary line.

In the spring of 1942, the plaintiff, who had long been a resident of Willimantic and was a very intelligent woman of many years' business experience, and who owned several pieces of real estate, desired to purchase a property for a residence. At her request the defendant met her on the O'Neil property and showed her through the house; afterwards she walked with him through the land and out over it to Bellevue Street. He told her that the easterly boundary line was "somewhere in the terrace" and pointed out the approximate boundary lines of the third parcel as subsequently described in the agreement hereafter referred to. They went over the property again two weeks later and the plaintiff then offered $9000, instead of the $10,000 asked, for the property, including the frontage on Bellevue Street. After the defendant later

told her that Mrs. O'Neil would accept her counter offer of $9000, he again took her through the house and over the land, but this time nothing was said concerning boundaries. A few days later, after carefully examining a written agreement submitted by the defendant, the plaintiff under date of July 9, 1942, joined with Mrs. O'Neil in executing it. It provided for the purchase, for $9000, of two tracts of land separately described, parcels one and three referred to above, with the exception of the small triangular piece, at the southwesterly corner of the latter, mentioned in the preceding paragraph. The agreement defined the southerly line of parcel one as running from the southwesterly corner of the premises "easterly by the northerly line of Prospect Street about 100.77 feet to land formerly of Jerome B. Baldwin," and continued, "thence northerly by said Baldwin land," no mention being made of the Clark land.

At no time did the defendant either tell the plaintiff that Mrs. O'Neil owned parcel two or the triangular piece, or that this land was not included in the sale. At no time did either Mrs. O'Neil or the defendant tell the plaintiff that they were selling her the entire property owned by Mrs. O'Neil. On August 10, 1942, after a prepared warranty deed and a mortgage back had been read in the presence of the plaintiff, each of which embodied the description of the two tracts substantially as set forth in the agreement, she agreed that they were in proper form, and the deeds were thereupon executed and delivered. On August 22, 1942, Mrs. O'Neil conveyed to the defendant Clara C. Clark the second parcel and contiguous triangular piece. Several months later, the plaintiff, upon being informed of this conveyance, learned for the first time that Mrs. O'Neil had owned land other than that which had been conveyed to the plaintiff. Upon the

defendant's refusal, after repeated requests by her, to sell this land to her, this suit was instituted. The facts found by the court as summarized above are not subject to correction.

By her brief the plaintiff expressly confines her claimed right to relief to one for actionable nondisclosure by the defendant. Furthermore, she accepts the following principles of law, which the trial court adopted from the Restatement, Restitution, § 8. To be actionable for fraud, the nondisclosure must be by a "person intending or expecting thereby to cause a mistake by another to exist or to continue, in order to induce the latter to enter into or refrain from entering into a transaction. . . . Comment b. . . . Non-disclosure is a failure to reveal facts. It may exist where there is neither representation nor concealment. Except in a few special types of transactions . . . there is no general duty upon a party to a transaction to disclose facts to the other party . . . [but] a person who, before the transaction is completed, knows or suspects that the other is acting under a misapprehension which, if the mistake were mutual, would cause the transaction to be voidable, is under a duty to disclose the facts to the other."

Relative to the application of this principle in a case involving alleged fraudulent silence of a defendant upon the sale of a farm to a plaintiff, we said that "the general rule is that the silence of a vendor with reference to facts affecting the value or desirability of property sold cannot give rise to an action by the vendee to set aside the transaction as fraudulent. Certainly this is true as to all facts which are open to discovery upon reasonable inquiry by the vendee." *Gayne* v. *Smith*, 104 Conn. 650, 652, 134 Atl. 62. But "A vendor of property may not do anything to conceal from the vendee a material fact affecting it, or say or do any-

thing to divert or forestall an intended inquiry by him, or deliberately hide defects, for, in so doing, he is not merely remaining silent but is taking active steps to mislead. So the surrounding circumstances may be such that the effect of his silence is actually to produce a false impression in the mind of the vendee, and the making of an agreement or doing of some other act may in itself lead the vendee to believe that a certain fact exists and so amount to an affirmation of it." Ibid.; see also *Stanio* v. *Berner Lohne Co., Inc.,* 127 Conn. 431, 434, 17 Atl. (2d) 502; *Watertown Savings Bank* v. *Mattoon,* 78 Conn. 388, 392, 62 Atl. 622. The question decisive of the plaintiff's appeal is whether the circumstances here were such that the defendant's silence must be held to have produced a false impression in the mind of the plaintiff as to the extent of the land being sold, rendering the defendant liable under the rule laid down by these authorities. Recognizing this, the plaintiff has confined her argument to the claims that the court's finding of essential facts and its conclusions thereon denying relief are unwarranted.

Because the serious sickness of the defendant prevented his appearance in court, by agreement his sworn statement was accepted in evidence. It read in part: "As to the twenty five foot lot—As we stood in the house by a window facing easterly Mrs. Haddad asked where the line was. I pointed through the window to the terrace and said somewhere in the terrace." Relying upon this evidence, the plaintiff contends that, since a primary meaning of the word terrace is "a raised level space or platform of earth with sloping sides, usually laid with turf" (Webster's Practical Dictionary), the use by the defendant of the last four words quoted in his statement indicated that the east boundary line was located somewhere within the level surface east of the bank, rather than along the foot of

the bank. Her argument is that, therefore, the court's vital finding that the defendant indicated to her that the boundary line of the property which she was to acquire was "along the terrace" cannot be sustained. Another primary meaning of terrace is collectively a bank of turf and the raised level place supported by it; Webster's New International Dictionary (2d Ed.); and it might well be claimed that its popular and generally understood meaning is the bank itself. Be this as it may, adoption of the meaning which she urges, restricted even to the "level space" only, cannot avail the plaintiff. Under it, "somewhere in the terrace" might be anywhere within the level space of over fifty feet between the bank and the Clark house, and so would be entirely too indefinite to fix any precise location. In finding that the line indicated by the defendant was "along the terrace," the court, as it could and should do, evidently determined the effect of the defendant's words in the light of all of the material circumstances. These included, among others, the description in the agreement of the south end of the line as being 100.77 feet from Church Street, the difference in height of the Prospect Street wall at this point and in its construction on either side thereof, the slope of the terrace, the trees and bushes along its top, and the unbroken level of the lawn extending from there to the Clark house. Charged with notice as she was of these facts, the plaintiff could not have been misled by the defendant's use of the words "somewhere in the terrace," and the court was warranted in finding, as it did, not only that the plaintiff understood that the boundary was to be "along the line of the terrace" but that the defendant by what he did and said in fact indicated to her that this was the boundary.

This being so, these further material findings cannot be disturbed: At all times during the transaction the

plaintiff understood that the Prospect Street property which she was buying had a total frontage thereon of 100.77 feet and that its eastern boundary was to be along the line of the terrace which separated parcel one from parcel two, and she also understood that the southern boundary line of the lot fronting on Bellevue Street was to be substantially in the location described in the agreement of sale and the deed; she made her offer for the property and signed the agreement with a full understanding and comprehension that what she was buying was the land just as it is described in the agreement; and at no time did the defendant intentionally conceal from the plaintiff the fact that her agreement did not contemplate the conveyance to her of all the O'Neil property.

The facts found furnish ample support for these conclusions by the court: The defendant did not know nor had he any reason to know or to suspect that the plaintiff was acting under any misapprehension or belief that parcel two or the triangular piece was to be included in the conveyance; as a matter of fact, she was not under any such misapprehension; and from this it follows that he was under no obligation to explain to the plaintiff any further than he did that Mrs. O'Neil owned property other than the two pieces for which the plaintiff was bargaining, or that other property belonging to Mrs. O'Neil was not included in the sale. The trial court was right in concluding that the plaintiff is not entitled to relief.

There is no error.

In this opinion the other judges concurred.