JOSEPH DUKSA v. CITY OF MIDDLETOWN ET AL.

House, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued March 3—decision released May 24, 1977

*Francis O'Neill,* city attorney, for the appellants (defendants).

*Waldemar J. Lach,* for the appellee (plaintiff).

LOISELLE, J. The plaintiff owns a farm in a part of Middletown zoned for industry. In 1970 he granted the defendant city of Middletown an easement and right-of-way across his land for a sewer, in return for the right to tie into the sewer without cost. The sewer was constructed for gravity flow, and because the plaintiff's land slopes down toward the river, part of the sewer was built in an embankment, which cut a portion of the farm into two pieces. The embankment is seventeen to eighteen feet high at the easterly end, is very steep and cannot be climbed or driven over. As soon as the city began to bring fill to construct the embankment, the plaintiff complained. He then brought suit, alleging that the city and its agents failed to disclose that the construction of the sewer would entail building an embankment, that he was unable to read construction maps and relied on the defendants to explain to him the effect of granting the easement, and that he was induced to execute the grant in reliance on their representation. As well as damages and other relief, he sought to have the grant set aside as to the portion involving the embankment. The court found the issues for the plaintiff and awarded damages. The defendant city has appealed.

The trial court found that when the plaintiff went alone to city hall to sign the easement, he met with

the defendant Frank Opalacz, who was in charge of acquiring easements for the city, and with three others. The plaintiff was told that the easement and construction maps were available for inspection. The construction map showed the elevation of the embankment. Opalacz offered to show the maps to the plaintiff, and told him to check them. The plaintiff did not examine the maps. He cannot read maps or understand them without difficulty.[1]

Opalacz, who dealt with the plaintiff, did not think the elevations were relevant; he did not intentionally withhold any information. His instructions were to explain the plaintiff's option to take either cash or the right to tie into the sewer, in exchange for the easement. Opalacz believed that the sewer would be a great benefit to the plaintiff even with the embankment, but he did not mention the embankment.

Opalacz advised the plaintiff to choose the right to tie in, which would increase the value of his land, which was zoned for industry, by a quarter of a million dollars, whereas he would get only a few thousand dollars if he took cash. He told the plaintiff, "If you were my father, that is what I would recommend to you." The plaintiff relied on Opalacz' statements, and Opalacz knew it.

The trial court concluded that the plaintiff and the city were not bargaining at arm's length from equal positions, and that the city had all the strength. It concluded that the plaintiff was informed of the benefits of the easement, but not

---

[1] The finding of the trial court was simply that the plaintiff cannot read maps. The appendix to the defendant's brief reveals that on cross-examination he qualified this by stating, "I don't think I could understand it. But I imagine, if I went through a lot of time and explanation, I imagine I would."

of its disadvantages, and that the city had a duty of full disclosure. The trial court further concluded that the right to connect on the part of the farm at or above the elevation of the sewer was a valuable right and that that right paid for that leg of the easement, but that the right to connect on the land lower than the sewer was without value.

Although the parties were not equal in bargaining power, that alone is not sufficient to justify rescission of this contract. Regarding the duty to disclose, "the general rule is that . . . silence . . . cannot give rise to an action . . . to set aside the transaction as fraudulent. Certainly this is true as to all facts which are open to discovery upon reasonable inquiry." *Gayne* v. *Smith,* 104 Conn. 650, 652, 134 A. 62; *Haddad* v. *Clark,* 132 Conn. 229, 233, 43 A.2d 221. "[M]ere nondisclosure . . . does not amount to fraud." *Watertown Savings Bank* v. *Mattoon,* 78 Conn. 388, 393, 62 A. 622. "To constitute fraud on that ground, there must be a failure to disclose known facts and, in addition thereto, a request or an occasion or a circumstance which imposes a duty to speak. *Ceferatti* v. *Boisvert,* 137 Conn. 280, 283, 77 A.2d 82; *Behrmann* v. *Behrmann,* 110 Conn. 443, 446, 148 A. 363." *Egan* v. *Hudson Nut Products, Inc.,* 142 Conn. 344, 347, 114 A.2d 213. Such a duty is imposed on a party insofar as he voluntarily makes disclosure. A party who assumes to speak "must make a full and fair disclosure as to the matters about which he assumes to speak." *Franchey* v. *Hannes,* 152 Conn. 372, 379, 207 A.2d 268.

Opalacz undertook to explain to the plaintiff the difference in value between cash payment and the right to tie into the sewer. He went further, and

undertook to advise the plaintiff that the value of the right to tie in was far greater, because it would increase the value of the plaintiff's land for industrial purposes. In giving this advice, he completely omitted mention that the lower part of the plaintiff's farm, where the sewer would be in an embankment, would derive no benefit from the right to tie in and that that part of the farm would be adversely affected. His advice was based only on the value of the right to tie into the part of the farm on a level with or higher than the sewer. Sewers are normally run underground. The material and unusual fact that a portion of the sewer would be above ground in an embankment should have been called to the plaintiff's attention when Opalacz assumed the duty of explaining the benefits of tying into the sewer.

Opalacz' failure to disclose was apparently innocent, and the court found that "Mr. Opalacz did not know how many feet difference there was going to be in elevation in the east-west leg." Nevertheless, the Restatement, Restitution, § 8, states in comment b, "The unintentional nondisclosure of facts as to which there is a duty of disclosure, as where one forgets to disclose a known fact, has the same effect as an innocent misrepresentation." A mistake induced by an innocent but material misrepresentation justifies rescission. *Henry* v. *Kopf,* 104 Conn. 73, 76, 131 A. 412. Restatement, Restitution, §§ 28, 39. It follows, therefore, that the unintentional nondisclosure of facts as to which there is a duty of disclosure, as in this case, justifies rescission.

It is not necessary to decide whether a city, dealing from a superior bargaining position with an individual citizen, has a duty of "full disclosure."

Under the circumstances of this case the city had a duty to disclose at least the fact that the sewer would be built in an embankment, and thus the plaintiff was entitled to rescission or to damages. *E. & F. Construction Co.* v. *Stamford,* 114 Conn. 250, 258, 158 A. 551.

The court awarded the plaintiff $33,000, arrived at by multiplying the sixty-six acres of the farm which were affected by the embankment times $500, the amount per acre by which the embankment damaged that part of the farm. This was an incorrect measure of damages. There is no suggestion that the portion of the contract involving the high land could be severed from that involving the low land for purposes of rescission or damages. The plaintiff might elect to rescind his contract and receive the value of the entire easement under the theory that the easement had been effectively condemned and taken by the city, or he could elect to receive damages equal to the difference between the actual value of the right to tie in and the value as represented. *Franchey* v. *Hannes,* 152 Conn. 372, 381, 207 A.2d 268.

Without filing a cross appeal, the plaintiff has assigned as error the denial of his motion to erase the defendants' motion to open the judgment, which was filed after the expiration of the statutory term of the court which rendered the original judgment. The proper method of raising this claim would have been by a cross appeal. *DiSesa* v. *Hickey,* 160 Conn. 250, 263, 278 A.2d 785; *Peterson* v. *Norwalk,* 150 Conn. 366, 382, 190 A.2d 33. The propriety of denying the motion to erase depends on whether proceedings looking to modification of the judgment were started before the expiration of the term.

See *D. V. Frione & Co.* v. *Harbor Construction Corporation,* 168 Conn. 386, 387, 362 A.2d 859. The printed record does not reveal such proceedings, but the memorandum of decision of the court which denied the motion to erase mentions such proceedings. It is thus apparent that permitting the plaintiff to attack a legal conclusion of the court which denied the motion to erase, without a cross appeal and a record of such proceedings or the lack of them, would be prejudicial to the defendant. Therefore the merits of this assignment of error will not be considered. *Rizzo* v. *Price,* 162 Conn. 504, 512, 294 A.2d 541.

There is error in part; the judgment is affirmed except as to the amount of damages awarded, and a new trial is ordered limited to that issue.

In this opinion LONGO, J., concurred.

BOGDANSKI, J. (concurring). When the plaintiff presented himself at city hall to seek information and advice from a city official concerning a sewer project that would cross his farm, he had no reason to believe he would be entering into the marketplace where the rule of caveat emptor would apply. Rather, he came to get information from a public servant: How would this sewer affect his farm? Would it affect his dairy farm operation? Would he get paid for the easement? If so, how much and how?

The director of the sewer department was handling sewer easement acquisitions for the city. He worked closely with the engineering department which adjoined his office in city hall. He affirmatively supplied the plaintiff with information about the sewer project and advised him what to do. When

he represented that it would be to the plaintiff's advantage to execute the easement and tie into the sewer, rather than to take cash, the plaintiff had a right to believe that the director had accurate knowledge of what he was representing. *Clark* v. *Haggard,* 141 Conn. 668, 109 A.2d 358. Indeed, the director went further. He stated that if the plaintiff were his own father he would advise him to do the same thing.

The director, however, informed the plaintiff of only the benefits that would accrue from the sewer easement. He did not tell him of the disadvantages: that the easement would result in cutting his farm in two by an embankment up to seventeen feet high, which would prevent the plaintiff from farming the land as a unit, and that expensive pumping equipment would be required to tie into the embankment portion of the sewer line. Had the plaintiff been informed of the embankment and the severance of his farm, he would not have executed the easement and would have sought legal and engineering advice.

Under the circumstances, where a city official is approached for information on a matter within his scope of technical knowledge and authority, and he chooses not only to provide the information requested but also chooses to make an affirmative recommendation intended to induce action on the part of the individual seeking the information, that official is required to make a full and fair disclosure as to the matters about which he assumes to speak. *Clark* v. *Haggard,* 141 Conn. 668, 672, 109 A.2d 358.

House, C. J. (dissenting). While I agree that had the trial court correctly determined the issue of liability then there was error on the issue of damages which would require a new trial, I do not

agree with the court's conclusion that there was liability and would, therefore, remand the case with direction to enter judgment for the defendants.

I see no basis in the court's finding for any liability on the grounds of either fraud or misrepresentation and there was clearly no confidential or other relationship between the parties which would support any conclusion of breach of duty on the part of the director of the town's water and sewer department, the defendant Opalacz. Nor, in my opinion, do the cases cited in the majority opinion support its contrary conclusions. The trial court expressly found that Opalacz did not know how many feet difference there was going to be in the proposed elevation, that he did not intentionally withhold any information from the plaintiff, that he told the plaintiff that the easement and construction maps were available for his inspection, offered to show the maps to him and, most significantly, "told the plaintiff to check the maps." The plaintiff had full opportunity to know exactly what easement he was granting but, according to the finding, "was busy, he wanted to get it over with and he wanted to settle the matter." All the facts were open to discovery upon reasonable inquiry by the plaintiff, Opalacz told him to make that inquiry and check the maps, and the plaintiff chose not to do so. I would find no liability on the part of the defendants.

It is unnecessary to comment on the conclusions of the concurring opinion. That opinion is predicated upon a recital of facts which I find unsupported by the court's finding.

In this dissenting opinion SPEZIALE, J., concurred.