[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 2419
On October 9, 1990, the plaintiffs, Stephen and Lisa Doerrer (hereinafter "Doerrers"), filed this four count action against the defendants, Edward and Susann Weyer (hereinafter "Weyers"). The Doerrers claim that the Weyers made misrepresentations and/or breached the provisions of their warranty deed when the Weyers conveyed property to the Doerrers which was already owned by third parties by virtue of an adverse possession claim. In the first three counts, the Doerrers allege intentional and fraudulent misrepresentation or nondisclosure, negligent misrepresentation or nondisclosure, and innocent misrepresentation, respectively. In the fourth count, the Doerrers allege that the conduct alleged in the first count constitutes breach of contract and breach of warranty by the Weyers by virtue of the defendants' duly executed warranty deed to the Doerrers dated October 6, 1987. In their claim for relief, the Doerrers seek money damages, punitive damages, and attorney's fees and costs.
On December 11, 1990, the Weyers filed an answer and two special defenses. In their first special defense, the Weyers allege that they made known to the Doerrers prior to closing that William and Anne Schmid were encroaching upon the property by means of a septic system. In the second special defense, the Weyers allege that any judgment rendered in the previous action between the Doerrers and the Schmids is invalid as to the Weyers because they were not parties to that action. On January 17, 1991, the Doerrers filed a reply to the special defenses in which the Doerrers denied both special defenses and further asserted with respect to the second special defense, that the Doerrers do not claim that the Weyers are bound by the judgment in a case to which the Weyers were not a party but maintain that the rules of collateral estoppel apply to certain facts in the case presently before the court.
This case was tried before the court on May 12, 13 and 14, 1992. Both parties filed briefs on June 5, 1992.
The court has indicated that the following facts are either undisputed or are supported by the evidence CT Page 2420 presented at trial.
On October 6, 1987, the Weyers conveyed approximately seventeen acres of land to the Doerrers by warranty deed. (See Plaintiffs' Exhibit A, Deed). Abutting the southerly border of the property conveyed are thirteen lots owned by various individuals. (See Plaintiffs' Exhibit B, 1985 Boundary Survey of Weyer Property).
Apparently, the Doerrers never walked the entire property prior to purchasing it, although they had ample opportunity to do so. It is unclear as to exactly when the Weyers had last observed the southerly boundary prior to conveying the property to the Doerrers. However, in 1985, the Weyers had hired Donald Carlson, a registered land surveyor, to locate the corner boundary markers and replace a marker in the southwest corner of the property. Carlson informed the Weyers that certain structures on one or more of the lots were encroaching upon the southerly border. The neighbors removed the structures at the request of the Weyers.
At approximately this time, one of the owners of one of the thirteen lots along the southerly border, Mrs. Anne Schmid, approached the Weyers with an offer to purchase a part of the defendants' property where she thought her septic system or field may be encroaching upon the property. The Weyers declined.
At the closing on October 6, 1987, the Weyers informed the Doerrers of the existence, or possible existence, of a septic field or system encroaching on the southerly border of the property. The Doerrers decided to complete the transaction.
After purchasing the property, the Doerrers subdivided the property, and three approved building lots were created. (See Plaintiffs' Exhibit V, April, 1988 Subdivision Plan). The April, 1988 map submitted by the Doerrers shows that Carlson staked the property along the southerly border. (See Plaintiffs' Exhibit V). Sometime thereafter, the Doerrers erected a fence along the entire length of the southerly border. (See Plaintiffs' Exhibit F, Check dated September 23, 1988 to Meadowbrook Gardens, Inc. for $3515.15). CT Page 2421
On October 19, 1988, abutting property owners William and Anne Schmid commenced a quiet title action against the Doerrers, seeking title to a small portion of the Doerrers' property along the southerly boundary by way of adverse possession. The Schmids also sought monetary relief for trespass and damage to their septic system by the erection of the fence. The Doerrers thereafter filed an action against the Schmids for trespass and nuisance. The cases were consolidated and tried before an attorney trial referee in April and May, 1990. The attorney trial referee filed a report and a memorandum of decision on June 14, 1990. (See Plaintiffs' Exhibit T, Report of Attorney Trial Referee; Plaintiffs' Exhibit S, Memorandum of Decision of Attorney Trial Referee). The attorney trial referee found that the Schmids had been using the disputed parcel as a part of their backyard since 1962. (See Plaintiffs' Exhibit S, pp. 2-3). The attorney trial referee thus found, by clear and convincing evidence that the Doerrers' predecessors in title, the Weyers, had been ousted of possession of the disputed parcel by the Schmids beginning not later than July 1, 1962, and therefore, title to the disputed parcel had passed by adverse possession to the Schmids approximately ten years before October 6, 1987, when the Doerrers bought the property from the Weyers by a deed which included the description of the disputed parcel. (See Plaintiffs' Exhibit T, p. 3, Plaintiffs' Exhibit S, p. 3). The attorney trial referee also found that Stephen Doerrer had damaged the Schmids' septic system to the sum of $500.00. (See Plaintiffs' Exhibit T, p. 4).
In September, 1990, the Doerrers commenced the present action against the Weyers. On December 21, 1990, the court, Edelberg, S.T.R., entered judgment in the other actions in accordance with the attorney trial referee's findings and recommendations. (See Plaintiffs' Exhibit P, Judgment). On January 9, 1991, the Doerrers appealed the judgment of December 21, 1990 to the appellate court. On December 3, 1991, the appellate court affirmed the judgment in a per curiam decision, stating that "[o]ur review of the records, briefs and oral argument convinces us that the conclusions reached by the attorney trial referee and accepted by the trial court are more than adequately supported by the subordinate facts found." (Citation omitted.) Schmid v. Doerrer, 26 Conn. App. 919, ___ A.2d CT Page 2422 (1991) (See Plaintiffs' Exhibit R).
On May 7, 1992, the Doerrers and Schmids entered into a boundary line agreement establishing the boundaries of the parcel acquired by the Schmids by adverse possession in accordance with the court's judgment. (See Plaintiffs' Exhibit C, Boundary Line Agreement; Plaintiffs' Exhibit D, Subdivision Plan, Revised February 5, 1992). The court heard testimony at the trial from an appraiser that the parcel acquired by the Schmids measures 2846 square feet, which is approximately .00384% of the total seventeen acre parcel conveyed by the Weyers to the Doerrers.
DISCUSSION
A. MISREPRESENTATION AND NONDISCLOSURE
 To constitute fraud by nondisclosure or suppression, "there must be a failure to disclose known facts and . . . a request or an occasion or a circumstance which imposes a duty to speak." Duska v. Middletown, 173 Conn. 124, 127, 376 A.2d 1099 (1977); Ceferatti v. Boisvert, 137 Conn. 280, 283, 77 A.2d 82 (1950). This duty arises when a vendor of property conceals from the vendee a material fact affecting it. A vendor of property may not do anything to conceal from the vendee a material fact affecting it, or say or do anything to divert or forestall an intended inquiry by him, or deliberately hide defects, for, in doing so, he is not merely remaining silent, but is taking active steps to mislead. Egan v. Hudson Nut Products Inc., 142 Conn. 344, 348, 114 A.2d 213 (1955): Gayne v. Smith, 104 Conn. 650, 652, 134 A. 622 (1926). "[T]he nondisclosure must be by a person intending or expecting thereby to cause a mistake by another to exist or continue, in order to induce the latter to enter into or refrain from entering into a transaction." Egan v. Hudson Nut Products, Inc., supra, 347-48. CT Page 2423
(Footnote omitted.) Wedig v. Brinster, 1 Conn. App. 123,130-31, 469 A.2d 783 (1983), cert. denied, 192 Conn. 803,472 A.2d 1283 (1984). The essential elements for an action in fraud for misrepresenting of material fact are: "`(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury.'" Id., 132, quoting Miller v. Appleby, 183 Conn. 51, 54-55,438 A.2d 811 (1981).
This court finds that, under the foregoing facts, the Weyers in good faith disclosed to the Doerrers the potential encroachment of the septic system. This court further finds that while the Weyers had discovered surface encroachments in 1985 along the southern boundary, the Weyers had requested that the neighbors remove the encroaching structures, and the neighbors had complied. Thus, while the Weyers knew that there had been surface encroachments in the past, no evidence was presented which would show that the Weyers knew of surface encroachments at the time of the conveyance to the Doerrers and either made misrepresentations or deliberately, negligently or innocently failed to disclose this knowledge.
Therefore, the court finds, under the facts recited above, that the Doerrers have not sustained their burden of proving that the Weyers made misrepresentations or failed to disclose facts regarding potential surface encroachments along the southern boundary of the property conveyed to the Doerrers. Accordingly, the court enters judgment for the Weyers as to the first, second and third counts of the complaint.
B. BREACH OF COVENANT OF WARRANTY
The deed conveying the property from the Weyers to the Doerrers is a warranty deed containing a covenant to warrant and defend the title against all claims and demands whatsoever. (See Plaintiffs' Exhibit A, Deed).
 The general effect of a covenant of warranty is that the grantor agrees to compensate the grantee for any loss the CT Page 2424 grantee may sustain by reason of a failure of the title which the deed purports to convey, or by reason of an encumbrance thereon. . . . A breach of this covenant occurs when, and only when, the grantee suffers an eviction under a paramount title. . . . It is now almost universal that the eviction may be either actual or constructive. An actual eviction occurs when the adverse party actually and forcefully removes the grantee from possession of the property by legal process or self-help, or when the adverse party is already in possession on the date the grantee acquired title of the premises.
6A Powell on Real Property 900[2][d] (1988, as updated to 1989); see also Butler v. Barnes, 60 Conn. 170, 192-93,21 A. 419 (1891).
The court finds, based upon the facts recited above, that the Doerrers suffered an actual eviction from the subject property conveyed to them by the Weyers by the warranty deed by virtue of the Schmids' adverse possession of that parcel and their subsequent quiet title action. The court therefore finds that the Weyers have breached the covenant of warranty contained in the deed.
The court finds that although the Weyers testified for the Doerrers in the Doerrers' actions against the Schmids, and thus had notice of the actions as of November, 1988, (See Plaintiffs' Exhibits M and N, Subpoenas of Susann and Edward Weyer), there was no evidence presented that the Weyers sought to join as parties to the actions to defend title. However, no evidence was presented which would show that the Doerrers ever requested that the Weyers defend the title to that disputed portion of the property that the Weyers had conveyed to the Doerrers. In Connecticut, unlike some jurisdictions, it appears that the liability of a covenantee in an action for breach of the covenant of warranty does not depend upon notice to the covenantor and/or a request or refusal to defend by the covenantor. See 21 C.J.S. Covenants 60(c) (1990, as updated to 1992). The court finds that pursuant to the covenant of warranty, the Weyers CT Page 2425 are liable to compensate the Doerrers for the losses the Doerrers have sustained by reason of the failure of the title to the portion of the property which has passed to the Schmids by adverse possession. Accordingly, the court enters judgment for the Doerrers as to the fourth count of the complaint.
C. DAMAGES
 Under our practice the covenantor may be vouched or summoned in the eviction proceedings to defend the title, or he may voluntarily undertake the defense. . . . If the covenantor fails or refuses to defend in the eviction proceedings, it is the duty of the defendant therein to defend the property as best he can. . . . Under such circumstances it is just and equitable that the plaintiff in the action for a breach of covenant of warranty, should be, to some extent at least, made good for the reasonable "cost which he has actually been put to" in an attempt made in good faith to defend the title.
Butler v. Barnes, 61 Conn. 399, 406, 26 A, 394 (1892).
 "In Connecticut the immemorial usage has been in actions brought to recover damages . . . on the covenant of warranty, to give (to the plaintiff) the value of the land at the time of the eviction, with the cost which he has sustained in the action by which he was evicted." Swift's Digest, 673. "When the warrantor is vouched or cited in, if the land should be recovered of the warrantee, . . . he (the warrantor) will be liable to pay the value of the land as well as the damages and costs recovered in such action." Id., 367. "We think too that when the warrantor has been vouched in to defend his title, the cost which the plaintiff has actually been put to is a fair ground CT Page 2426 of damages." . . . [T]he practice has been quite general in the trial courts in such cases, to allow, as part of the damages, counsel fees and other items . . . [such as bill of costs, bill of surveyors, and cost of maps and witnesses in the eviction action], if the same were reasonable in amount, and had been incurred in good faith in the eviction proceedings.
(Citation omitted.) Butler v. Barnes, 61 Conn. 300, 404-05,26 A. 394 (1892).
The court finds, based on the foregoing caselaw, that the Doerrers are entitled to compensation for the value of the 2846 square foot parcel of land at the time of the eviction, as well as costs and expenses, including attorney's fees, incurred by the Doerrers in defending title to the property. Id.
1. Value of Land
The court heard testimony from expert witnesses presented by both the Doerrers and the Weyers as to the value of the 2846 square foot parcel of land. The Doerrers' expert testified that the parcel was worth $9,700.00 as of the time of the eviction. The Weyers' expert testified that the parcel was worth $1,800.00 as of the time of the conveyance. The court finds that, as the 2846 square foot parcel comprises only .00384% of the seventeen acre parcel conveyed by the Weyers to the Doerrers, the value of the parcel even as of the time of the eviction was closer to $1,800.00 than $9,700.00, and thus, the Doerrers are entitled to $1,800.00 of the value of the land at the time of the eviction.
2. Attorney's Fees and Costs to Defend
"As a general rule, costs and expenses of litigation reasonably and necessarily incurred by a covenantee in defending his title are recoverable by him in an action for breach of covenant." (Emphasis added.) 21 C.J.S. Covenants 60(a) (1990, as updated to 1992); see also Butler v. Barnes, 61 Conn. 399, 405, 26 A. 394 (1892). The court finds that the Doerrers are entitled to the attorney's CT Page 2427 fees and costs associated with defending their title against the Schmids.
However, the court finds that the Doerrers are not entitled to reimbursement for any attorney's fees or costs incurred in the action brought by the Doerrers against the Schmids, as such expenses were not incurred defending the Doerrers' title to the property in dispute. See generally, 21 C.J.S. Covenants 60(a) (1990, as updated to 1992).
Research revealed no Connecticut cases which have addressed whether attorney's fees for actions instituted by the covenantee against third parties may be recovered as one of the expenses of defending title. There is apparently a split of authority among the courts that have addressed this issue. See 20 Am.Jur.2d Covenants, Conditions and Restrictions 153 (1965, as updated to 1992). Under the factual situation of this case, the court finds that the Doerrer' action against the Schmids, instituted immediately after the Schmids commenced their suit against the Doerrers, was not a necessary expense incurred in defending the Doerrers' title, as the Doerrers had filed a counterclaim or "cross-complaint" in the action brought by the Schmids which was "virtually identical" to the separate action brought by the Doerrers against the Schmids. (See Plaintiffs' Exhibit T, p. 2). Indeed, "[t]he parties stipulated at trial, and . . . it is obvious, that all the issues raised by both cases are adequately framed by the pleadings in Schmid v. Doerrer, No. CV-88-0052982-S." (Plaintiffs' Exhibit T, p. 3). Further, "[t]he covenantee cannot recover attorney's fees incurred against the covenantor for the breach." 20 Am.Jur.2d Covenants, Conditions and Restrictions 152 (1965 as updated to 1992). The court therefore subtracts from the amounts shown in the copies of bills submitted by the Doerrers, the fees and costs which are clearly related to Doerrer v. Schmid, Doerrer v. Weyer, and the "Town of Westbrook" matter appearing in the notations on the bills. (See Plaintiffs' Exhibits L and Y, Attorney's Bills, and Exhibit Z, Bill Summary).
The court finds, in the absence of any caselaw or other authority cited by the Doerrers in support of their claim, that the Doerrers have not met their burden of showing that their appeal to the appellate court of the trial court's decision in the earlier litigation was a necessary expense, CT Page 2428 especially given the statement in the appellate court's per curiam decision that the trial court's decision was "more than adequately supported by the subordinate facts found." Schmid v. Doerrer, 26 Conn. App. 919, ___ A.2d ___ (1991).
The only legal authority found on this issue expressly states that "[t]he covenantee cannot recover the costs of an unsuccessful appeal from a judgment of eviction, where such appeal was not taken at the covenantor's request, but such costs may be included if the appeal was authorized by the covenantor." (Footnotes omitted.) 20 Am.Jur.2d Covenants, Conditions and Restrictions 150 (1965, as updated to 1992). No evidence was presented that the Weyers requested or authorized the Doerrers' appeal. Therefore, the court finds that the Doerrers have not met their burden of showing that the court should award, as part of the damages for a breach of a covenant of warranty, the attorney's fees and costs incurred by the Doerrers for an appeal after unsuccessfully defending their title at the trial court level.
Accordingly, the court finds that the Doerrers are entitled to $8,362.88 for attorney's fees and costs, which, after carefully reviewing the time sheets and bills submitted by the Doerrers, represents the fees and costs of defending the action brought against the Doerrers by the Schmids, minus any fees and costs which had notations beside them indicating that they were incurred in the Doerrer v. Schmid action, the "Town of Westbrook" matter or in relation to this action against the Weyers. (See Plaintiffs' Exhibits L, Y and Z).
The court finds that the Doerrers are entitled to recover $1,452.20, which consists of the damages and costs that the Doerrers were obligated to pay to the Schmids as a result of the Schmids' quiet title action. (See Plaintiffs' Exhibit Z). The court finds that the expenses of two surveys done by Donald Carlson immediately before the initiation of the Schmids' quiet title action, and after the conclusion of that action were reasonably and necessarily incurred by the Doerrers in defending their title and thus the Doerrers are entitled to reimbursement in the amount of $265.00 and $381.60 for those surveys. (See Plaintiffs' Exhibits H-3 and I).
Finally, the court finds that the Doerrers' claim CT Page 2429 for reimbursement for $3,515.15 which the Doerrers claim they expended to fence the entire southern boundary of their property was not a reasonable and necessary cost of defending their title, but rather, except for a small parcel in dispute, was done for the Doerrers' own benefit. As the Doerrers presented no evidence as to the cost incurred in fencing that small parcel, the court finds that the Doerrers have not met their burden of proving that they are entitled to any reimbursement for fencing.
CONCLUSION
The court enters judgment for the Weyers as to the first, second and third counts of the complaint. The court enters judgment for the Doerrers as to the fourth count. Accordingly, the court, in accordance with the above discussion, awards damages to the Doerrers in the total amount of $12,261.68, consisting of the value of the land at the time of the eviction and the costs and expenses incurred in defending their title in the action brought by the Schmids, including reasonable attorney's fees and costs at the trial court level, the damages and costs paid to the Schmids in the previous litigation, and the costs of surveys in relation to the litigation.
O'Connell, J.
Judgment Entered in Accordance with Foregoing Memorandum of Decision.
Michael Kokoszka, Chief Clerk