[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE PLAINTIFF'S MOTION TO SET ASIDE VERDICTON THE COUNTERCLAIM OF EMC
Plaintiff moves to set aside the defendant Energy Maintenance Corporation's (EMC) verdict on its counterclaim as against the evidence and contrary to law. Defendant objects.
I Evidence
In answer to Jury Interrogatory 2 the jury found that EMC had proven by clear and convincing evidence that Lussier had fraudulently concealed from EMC his submission CT Page 9795 of certain "false, fictitious or fraudulent" claims to the United States. Although there was some testimony by plaintiff and a Mr. Kjell Josefsson that EMC was made aware of the "fraud" the jury was not required to believe it and was left with a mass of evidence that EMC was not told of the fraud.
II Contrary to law
The court affirms its rulings on trial.
MEMORANDUM OF DECISION
RE MOTION TO SET ASIDE DEFENDANTS' JURY VERDICT ON COMPLAINT
Plaintiff moves to set aside the verdict because it is against the evidence and contrary to law. Defendants object.
I Evidence
A Value of Shares
The defendants, Haeflich and Christman (the defendants) each received 24 shares of Energy Maintenance Corporation (EMC) stock plus $2,500 as compensation for some services provided to EMC. The jury in response to Jury Interrogatories Item 4 stated that defendants each had provided services to EMC for which the issuance of the 24 shares plus payment of $2,500 was reasonable compensation. The jury was entitled to so find by clear and convincing evidence.
B Interrogatory 6
The jury found that Energy Services, Inc. (ESI) proved by clear and convincing evidence that ESI continued to market EMC's capabilities after November 29, 1989. The defendants' testimony supports that answer.
II Law
The court affirms its trial rulings.
Motion denied. CT Page 9796
N. O'Neill, J.
MEMORANDUM OF DECISION RE DEFENDANTS PETER CHRISTMAN, JACK HAEFLICH,and ENERGY SERVICES, INC. REQUEST FOR RECISION
In their amended counterclaim of August 4, 1994 the two individual defendants (defendants) seek recision of a buy-sell agreement dated November 16, 1987. The defendant Energy Services, Inc. (ESI) is joined as a party in that counterclaim.
Facts
From December 12, 1977 until February 12, 1990, Energy Maintenance Corporation (EMC) employed plaintiff as its President and Chief Executive Officer and was a member of its Board of Directors (Board).
From December 12, 1977 until approximately November 29, 1989, plaintiff supervised the day-to-day operations of EMC.
Plaintiff is a shareholder in EMC.
As President, Chief Executive Officer and Director he occupied a fiduciary relationship to it and was bound to a duty of good faith, fair dealing and loyalty. He also had a fiduciary duty to disclose accurately to EMC's directors and officers EMC's finances.
While plaintiff was President, Chief Executive Officer and Director, EMC provided maintenance and repair services to the United States Government. During that time and unknown to the remaining officers and directors of EMC, he engaged in a continuing conspiracy to defraud the United States Government. While its President, Chief Executive Officer and Director, and unknown to the remaining officers and directors of EMC, he engaged in a continuing course of personally directing or authorizing certain employees to defraud the United States Government.
On September 29, 1990, plaintiff was indicted and charged with having committed numerous offenses including conspiracy to defraud the United States, in violation of CT Page 9797 19 U.S.C, Section 286. On December 20, 1990 he pled guilty to the charge of conspiracy to defraud the United States. On the same day he was charged by information with Tax Evasion, in violation of 26 U.S.C. § 7201, and pled guilty to the charge of Tax Evasion.
On March 28, 1991, he was sentenced for the crimes of conspiracy to Defraud the United States and Tax Evasion to thirty-three (33) months imprisonment and three (3) years supervised release subject to the following conditions: payment of a $25,000.00 fine; maintenance of full-time employment; and performance of 900 hours of community service.
The United States brought a civil action against plaintiff for his role in the conspiracy to defraud the United States, United States v. George v. Lussier, Civ. No. H-90-810 (TFGD, D. Conn.), which on March 29, 1991, plaintiff resolved by signing an agreement. That agreement stated:
 EMC engaged in the following conduct known to and under the direction of George v. Lussier; charging the Coast Guard for new parts when EMC in fact installed used parts; charging the Coast Guard for repair work that was neither necessary nor performed; and replacing them with parts of inferior quality.
As a result of plaintiff's conduct, the United States charged EMC with the submission of false, fictitious or fraudulent claims, in violation of 18 U.S.C. § 287.
As a result of plaintiff's conduct, EMC pled nolo contendere to the charge of false, fictitious or fraudulent claims and paid a $200,000.00 fine and a $200.00 special assessment.
As a further result of plaintiff's actions in conspiring to defraud the United States Government and in submitting false, fictitious or fraudulent claims, the United States was about to commence a civil action against EMC under the False Claims Act and EMC had to enter into a settlement with the United States under which EMC agreed to pay $1,100,000.00 to the United States; $300,000.00 within CT Page 9798 thirty (30) days of the execution of the settlement agreement, and then the remaining $800,000.00 in twelve (12) equal, quarterly installments commencing ninety. (90) days from the $300,000.00 payment, with interest. To secure the $1,100,000.00, EMC granted the United States Government a security interest in its property and receivables, and certain EMC officers and directors personally guaranteed the first $800,000.00 of that debt. In addition, to settle the civil claim, EMC agreed to a six (6) month debarment from government contracting.
As a further result of plaintiff's conduct, EMC incurred investigations costs, attorney's fees, and other costs to defend the federal criminal and civil actions.
On December 12, 1977, EMC, plaintiffs Christman and Haeflich entered into a "buy-sell agreement" which provided for the disposition of stock in EMC upon the death of plaintiffs Haeflich or Christman, and the formula for determining the value of stock at such time.
The "buy-sell agreement" provided for the maintenance of life insurance.
On August 31, 1979, the "buy-sell agreement" was amended in part to change the purchase price formula and the terms of payments of the purchase price.
On February 10, 1983, the "buy-sell agreement" was amended to provide that EMC would purchase all the stock of plaintiffs Haeflich or Christman if certain events occurred; to change the purchase price formula to $28,300.00 per share with the parties to redetermine the price quarterly; to provide that if the purchase is of the stock on the death of Haeflich, Christman or plaintiff, the purchase price would include the amount of any life insurance proceeds received upon such death; and to increase the amount of life insurance on plaintiff to $2,000,000.00.
On November 16, 1987, the "buy-sell agreement" was again amended to set the price at $70,000.00 per share with the parties to redetermine the price quarterly, and in the case of plaintiff's death, the purchase price would be increased to be at least the amount of life insurance CT Page 9799 proceeds received by EMC in case of his death. In addition EMC was required to increase the life insurance held by EMC and paid for by EMC on plaintiff's life from $2 million to $5.6 million, effectively making the value of plaintiff's stock at the time of his death $140,000.00 per share.
Prior to the making of the 1979, 1983 and 1987 amendments to the "buy-sell agreement", plaintiff as director, officer and shareholder of Energy Maintenance Corporation, breached his duty to disclose accurately to the remaining shareholders, board members and directors of EMC the corporation's finances and the true value of EMC's stock.
Relying upon the misrepresentations of that breach, the officers, directors and shareholders of EMC amended the "buy-sell agreement" in 1987 to the benefit of plaintiff and to the detriment of EMC and its shareholders.
Plaintiff never fulfilled his fiduciary duty to report accurately the financial conditions of the corporation until after November 1, 1989.
Law
I Statute of Limitations
The date from which the statute of limitations, C.G.S. § 52-577, begins to run is November 1, 1989 as that is the date on which defendants first knew or in the exercise of reasonable diligence should have known of plaintiff's fraudulent actions in regard to the United States. This counterclaim was commenced February 20, 1992.
The action being for misrepresentation and a breach of fiduciary duty is governed by the tort statute of limitations, C.G.C. § 52-577. Arrigoni v. Adorno,129 Conn. 673, 680-681. That is a three (3) year statute and thus the action is not barred.
Although the statute is clearly an "occurrence statute" SMS Textile Mills, Inc. v. Brown, Jacobson,Tillinghast, Lahan King, P.C., 32 Conn. App. 786, 790, plaintiff breached his duty until at least November, 1, 1989. CT Page 9800
I Laches
The plaintiff has failed to sustain his burden of proof in regard to his claim of laches.
III Fraud
The basis of a fraud claim is in five (5) parts. First, the proponent must prove that the fraud-doer made a misrepresentation of fact; second, that the misrepresentation was untrue when made; third, that the fraud-doer knew that it was untrue when made; fourth, that he made the misrepresentation to induce the proponent to act or not act; and fifth, that the proponent did act or fail to act in reliance on the misrepresentation to his injury.
1. Misrepresentations
The claimed misrepresentation is plaintiff's failure "to disclose accurately to Energy Maintenance Corporation's directors and officers" the corporation's finances. This is not a positive statement of something untrue but rather an omission to disclose the inaccuracy of the corporation's finances.
Our general statutes require corporations to "maintain correct and complete books and records of account and . . . minutes of proceedings . . .". C.G.S. § 33-307.
The corporate by-laws of EMC state that the "President . . . shall be the Chief Executive Officer of the Corporation and shall have general charge and direction of the business of the Corporation subject to the control of the Board of Directors", plaintiff became president December 12, 1977 and was terminated as president November 20, 1989. The president of a corporation is bound by virtue of his office to protect its best interests.Slosberg v. Callahan Oil Co., 125 Conn. 651, 655.
The defendants claim that fraud may occur by omission. "To constitute fraud by nondisclosure or suppression there must be a failure to disclose known facts and, as well, a request or an occasion or circumstances which imposes a CT Page 9801 duty to speak", Behrman v. Behrman, 110 Conn. 443, 446,Ceferatti v. Boisvert, 137 Conn. 280, 283. Plaintiff had a duty to report accurately the financial condition of the corporation, Pacelli Bros. Transportation, Inc. v. Pacelli,189 Conn. 401, 407. The occasions were those when he did report, knew the facts and failed to disclose them. The defendants relied on him to report accurately and they relied on the knowingly false and inaccurate reports he made. As a result they entered into the November 16, 1987 agreement.
IV Burden of Proof
Whether by positive statements or by omissions the proponent must prove the elements of fraud by clear and convincing evidence. They did.
V Remedy
Recision is an appropriate remedy. Kovarco v. T.J.E.,Inc., 2 Conn. App. 294, 298-299. Damages would not suffice.
The agreement is rescinded.
N. O'Neill, J.