[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE
In this case, the plaintiffs seek to recover damages for personal injuries allegedly sustained by them and their minor children as a result of their 1993 exposure to lead-based paint on interior and exterior surfaces of a house that they purchased in 1990. This action has been brought against the home seller ("Acker"), a real estate broker and a real estate agency ("Mira and Prudential").
The fourth revised complaint has twelve counts.[1] Acker has moved to strike counts one (failure to disclose), three (breach of implied warranty), and four (CUTPA); Mira and Prudential have moved to strike all counts against them. The court heard oral argument on both motions to strike together on February 27, 1998 and, in light of the many common issues, will address both motions in this single memorandum.
In ruling on these motions, "the court is limited to the facts alleged in the complaint." Waters v. Autori, 236 Conn. 820,825, 676 A.2d 357 (1996). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." S.M.S. Textile v. Brown, Jacobson, Tillinghast, Lahan and King,P.C., 32 Conn. App. 786, 796, 631 A.2d 340 (1993). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged."Novametrix Medical Systems v. BOC Group, Inc., 224 Conn. 210,215, 618 A.2d 25 (1992).
 General Discussion
The plaintiffs, purchasers of land, seek to recover, from the seller, a real estate broker and his agency,[2] for personal CT Page 6458 injury resulting from their alleged exposure, some years after the purchase, to lead in paint on the interior and exterior surfaces of the premises they purchased. To successfully plead such a cause of action, they must overcome the hurdle of caveat emptor and allege facts sufficient to state a recognized exception to the general rule of nonliability of a vendor of real estate for physical harm to he vendee.
"In the absence of express agreement or misrepresentation, the purchaser is expected to make his own examination and draw his own conclusions as to the condition of the land; and the vendor is, in general, not liable for any harm resulting to him or others from any defects existing at the time of the transfer." W. Prosser W. Keeton, Torts (5th Ed. 1984) § 64, p. 447. "The common law rule [of caveat emptor] continues to have vitality even though it has given way to liability for negligence in special cases such as those involving the defective construction of buildings or their appurtenances by builder-vendors of real property." Connecticut Resources Recovery Authority v. RefuseGardens, Inc., 229 Conn. 455, 458, n. 5, 642 A.2d 697 (1994). "Ordinarily, when an owner of land sells real estate, he ceases to be liable for injuries occurring on the land when he parts with title and possession, unless he transfers the land with knowledge of concealed defects." Wright et al., Connecticut Law of Torts (3rd Ed. 1991) § 52, p. 135.
The general rule concerning a vendor's liability to a vendee is that "a vendor of land is not subject to liability for physical harm caused to his vendee or others . . . after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession." 2 Restatement (Second), Torts § 352 (1965); 77 Am.Jur.2d § 326. The exception to the rule holds liable a vendor "who conceals or fails to disclose . . . any condition . . . which involves unreasonable risk . . . if (a) the vendee does not know or have reason to know of the condition or the risk involved, and (b) the vendor knows or has reason to know of the condition, an realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk." 2 Restatement (Second), Torts, § 353; 77 Am.Jur.2d § 328. However, "[t]he vendor is under no duty to either his vendee or those who may be expected to enter upon or use the land in his right, to inspect the land in order to discover its actual condition." 2 Restatement (Second), Torts, § 353, comment (b). CT Page 6459
 Facts Common to All Counts
Paragraphs 1-5 of the first count of the fourth revised complaint, dated January 20, 1997, contain the core allegations that form the factual basis of all the counts of the complaint. These facts are: The plaintiffs, Rommerro and Lisa W. Farrah (Farrahs"), and their minor children, Rebecca and George, are presently residing at 67 Lexington Avenue, West Hartford, Connecticut. The defendant Alfred Acker ("Acker") is presently residing in Niantic, Connecticut. The defendant Lou Mira ("Mira") is a real estate broker. Mira acted as an agent or employee of the defendant Prudential Connecticut Realty ("Prudential"). The Farrahs entered into a Purchase and Sale agreement on or about June 8, 1990 with Acker, with the assistance of Mira and Prudential, for the purchase and sale of 67 Lexington Avenue. The agreement had an addendum that the Farrahs would paint the exterior and that Acker would take back a mortgage. In December, 1993, the Farrahs discovered they were exposed to lead paint, both intact and non-intact, on the interior and exterior surfaces of the premises.
 First, Fifth and Ninth Counts (Failure to Disclose)
The first count, against Acker, the fifth count, against Mira as agent of Prudential, and the ninth count[3], against Mira and Prudential, allege, in addition to the facts recited above, a failure to disclose the lead paint conditions, a failure to de-lead premises before allowing the plaintiffs to reside in the premises, and a failure to inspect the premises to determine the lead paint conditions ¶ 6(a)(b)(c)). Since the defendants had no duty to the plaintiffs to disclose, de-lead or inspect the premises, these counts must be stricken.
Under § 353 of the Restatement, to state a cause of action against the defendant Acker for a failure to disclose "the lead paint conditions"[4] the plaintiffs were required to allege that they did not know or have reason to know of the condition or risk involved and Acker knew or had reason to know of the condition and that Acker realized or should have realized the risk involved and that Acker had a reason to believe that the plaintiffs would not discover the condition or realize the risks. The allegations here — that Acker sold the premises to the Farrahs in June 1990, agreed to let them paint the exterior and took back a mortgage — are woefully inadequate to impose CT Page 6460 liability upon Acker for failure to disclose a dangerous condition. Since these allegations fail against Acker, they likewise must fail against Mira and Prudential.
Furthermore, the defendants had no duty to the plaintiffs to de-lead the premises. The plaintiffs do not identify, nor can they, any such duty imposed by common law. In June 1990, while General Statutes § 19a-11c (Rev. 1989) required an "owner of any dwelling in which the paint . . . contain[s] toxic levels of lead and in which children under the age of six reside"
(emphasis supplied) to remove or cover such materials, there are no facts alleged against Acker that would bring him within the purview of that statute and Mira and Prudential were not owners.
Finally, the defendants had no duty to inspect the premises to discover its actual condition. 2 Restatement (Second) Torts, § 353, comment (b). Indeed, even under recently effective federal and state lead disclosure requirements pertaining to the sale of residential property, there is no duty on the part of a seller or broker to test or inspect for lead paint, but simply a requirement to disclose the existence of known lead paint. See24 C.F.R. Part 35; 40 C.F.R. Part 745; Gen. Stat. § 20-372b; Sostman, Who Takes the Lead in Lead Abatement: Liability Under State and Federal Regulation of Lead Paint, 71 Conn. B.J. 233 (1997).
 Sixth and Tenth Counts (Negligence)
The sixth and tenth counts, which are essentially identical,[5] allege that Mira and Prudential, with actual or constructive knowledge that the premises were constructed or renovated before 1978, were negligent in failing to warn the Farrahs of the dangers and hazards of lead paint (¶ 6(a)), failing to warn the Farrahs of the proper, safe and appropriate means of de-leading the premises (¶ 6(b)), failing to properly de-lead the premises (¶ 6(c)), failing to warn the Farrahs that proper inspections for lead paint should be performed (¶ 6(d)), failing to inspect for lead paint (¶ 6(e)), and allowing the Farrahs to remain in possession of the premises (¶ 6(f)).
Mira and Prudential argue that no facts are alleged that establish any duty to the Farrahs. The existence of a duty of care is question of law for the court. See e.g., Jaworski v.Kiernan 241 Conn. 399, 404, 696 A.2d 332 (1997); Waters v.CT Page 6461Autori, supra, 236 Conn. at 826. This court has already concluded that the complaint is insufficient to establish any duty on the part of Mira and Prudential to disclose lead paint in the premises, to de-lead the premises or to inspect for lead paint. See pages 5-6, supra. Likewise, the court concludes that the complaint is factually insufficient to support any duty on the part of Mira and Prudential to warn the Farrahs of conditions that their own inspection of to property could have uncovered.
The "threshold inquiry" for the existence of a duty is "whether the specific harm alleged by the plaintiff was foreseeable to the defendant. . . . [I]f it is not foreseeable to a reasonable person in the defendant's position that harm of the type alleged would result from the defendant's actions to a particular plaintiff, the question of the existence of a duty to use due care is foreclosed, and no cause of action can be maintained by the plaintiff." RK Constructors, Inc. v. FuscoCorp., 231 Conn. 381 385-86, 650 A.2d 153 (1994). Under the facts as alleged in the complaint, the only actions taken by Mira and Prudential were to assist the Farrahs and Acker in entering into a purchase and sale agreement for the property. Like Acker, Mira and Prudential could reasonably expect that the Farrahs would make their own examination and draw their own conclusions at to the condition of the property. See e.g., 2 Restatement (Second), Torts, § 353, comment (d). It would be unreasonable for them to conclude that their own failure to warn the Farrahs about potentially dangerous conditions that the Farrahs themselves could discover could lead to actionable harm. Accordingly, the sixth and tenth counts are stricken.
 Third and Seventh Counts (Implied Warranty of Habitability)
The third count, against Acker, and the seventh count, against Mira and Prudential, allege a breach of an implied warranty of habitability, allegedly embodied in the Purchase and Sale agreement ¶ 6). These counts add an extra paragraph to the first five pargraphs of the first count alleging that the defendants impliedly warranted the habitability of the premises and were therefore obligated to provide the Farrahs with premises that were safe, clean and habitable (¶ 6). Since there is neither a common law nor statutory basis to imply a warranty of habitability in a purchase and sale agreement, these counts must be stricken.
The plaintiffs claim that a warranty of habitability may arise out CT Page 6462 of a purchase and sale agreement, relying on Holly Hill Holdings v.Lowman, 30 Conn. App. 204, 619 A.2d 853, aff'd., 226 Conn. 748,628 A.2d 1298 (1993). Neither the Supreme Court nor the Appellate Court made any statement in their Holly Hill opinions about an implied warranty of habitability arising from a purchase and sale agreement. Rather, the decisions emphasize the freedom of contracting parties in real estate transactions to expressly "contract for the assumption of known or unknown hazards and risks that may arise as a consequence of the execution of the contract," id, 226 Conn. at 755-56, and to even disclaim statutory warranties, but that is not the case here.
"There is no implied warranty on the sale of real estate. A seller of real estate cannot be held liable for the defective condition of the premises." Mellen v. Hartford Gas Co.,17 Conn. Sup. 489, 490 (1952). "The rule of caveat emptor requires a purchaser of an existing house to reduce purported warranties to contractual form." 77 Am.Jur.2d § 326. See, e.g., 24Leaggett Street Ltd. Pts. v. Beacon Ind., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 398306 (July 5, 1995, Allen, J.) (breach of warranty claim depends on interpretation of warranties set forth in the Purchase and Sale agreement). Lacking an express warranty of habitability, the plaintiffs cannot imply a warranty that the law does not recognize. Accordingly, these counts are stricken.
 Eleventh Count (Misrepresentation)
The eleventh count against Mira and Prudential attempts to allege misrepresentation by adding the following conclusory allegation to the first five paragraphs: "Due to misrepresentations of the lead paint condition and failure to disclose the lead paint condition by Defendants Mira and Prudential, the property conveyed to Plaintiff was uninhabitable and/or greatly depreciated, and therefore lacked sufficient consideration at the time of sale."
In this state, causes of action are recognized for fraudulent, negligent and innocent mispresentations of fact. See e.g., Gibson v. Capano, 241 Conn. 725, 730, 699 A.2d 68 (1997);Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 575,657 A.2d 212 (1955) D'Ulisse-Cupo v. Notre Dame High School,202 Conn. 206, 219, 520 A.2d 217 (1987); J. Frederick Scholes Agencyv. Mitchell, 191 Conn. 353, 358, 464 A.2d 795 (1983); Miller v.Appleby, 183 Conn. 51, 54-55, 438 A.2d 811 (1981). An essential element of these causes of action is that the defendants made a CT Page 6463 statement of material fact upon which the plaintiffs relied. While the court recognizes that the pleader does not have to use that precise language to allege a claim of misrepresentation,D'Ulisse-Cupo v. Dame High School, supra, 202 Conn. at 219, there must at least be some facts alleged in the complaint from which the court may infer that Mira and Prudential made a statement to the Farrahs regarding lead paint in the premises upon which the Farrahs relied.[6] See Parker v. Shaker Real Estate, Inc.,47 Conn. App. 489, 495, 705 A.2d 210 (1998). Since the complaint does not contain any allegations that Mira and Prudential made an statements of fact regarding the existence or non-existence of lead paint on the premises, this essential element has not been alleged.
Finally, the allegation that Mira and Prudential failed to disclose the lead paint condition is insufficient to state a cause of action for misrepresentation in this case. "Usually, mere nondisclosure does not amount to fraud. See Duksa v.Middletown, 173 Conn. 124, 127, 376 A.2d 1099 (1977). Nondisclosure may, however, amount to fraud when there is a failure to disclose known facts under circumstances that impose a duty to speak. See id.; Wedig v. Brinster, 1 Conn. App. 123, 131,469 A.2d 783 (1983), cert. denied, 192 Conn. 803, 472 A.2d 1284
(1984)." Bernard v. Gershman, 18 Conn. App. 652, 656,559 A.2d 1171 (1989). This court has already concluded that Mira and Prudential had no duty to disclose any lead paint conditions to the Farrahs. See page 5, supra. Further, in the absence of allegations that Mira or Prudential undertook to speak on this subject, id., or that a circumstance arose which imposed a duty on them to speak on this subject, Duksa v. Middletown, 173 Conn. 124, 127, 376 A.2d 1099
(1977), the claim of failure to disclose is insufficient. Accordingly, the eleventh count must be stricken.
 Fourth and Twelfth Counts (CUTPA)
The twelfth count seeks to allege a CUTPA violation on the part of Mira and Prudential premised on the allegations against them in the seventh, ninth and tenth counts. As discussed above, these counts have been stricken as a matter of law or for failure to allege sufficient facts to support the causes of action claimed. Therefore, because the plaintiffs' CUTPA claim is dependent upon the sufficiency of their claims in the seventh, ninth and tenth counts, the motion to strike the twelfth count is granted. CT Page 6464
The fourth count alleges that Acker violated CUTPA based on the allegations contained in the first, second and third counts. Acker's motion to strike the first and third counts has been granted and those allegations cannot support the CUTPA count. Acker has not challenged the sufficiency of the allegations of the second count which sound in common law negligence, but argues that the fourth count must be stricken because its sole basis is simple negligence.[7]
The question of "whether negligence alone is sufficient to support a CUTPA violation" remains undecided by our appellate courts. See Haynes v. Yale-New Haven Hospital, 243 Conn. 17, 34,699 A.2d 964 (1997). Relying on dicta in Williams Ford, Inc. v.Hartford Courant Co., supra, 232 Conn. at 593 and A-G Foods, Inc.v. Pepperidge Farm, Inc., 216 Conn. 200, 216-17, 579 A.2d 69
(1990), judges of the Superior Court have concluded that when the underlying claim of a CUTPA count is grounded in negligence, all three criteria of the "cigarette rule" must be satisfied. SeeAnzellotti v. National Amusements, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 546129 (Feb. 20, 1996) (Hennessey, J.); Pollio v. Santillo, Superior Court, judicial district of New Haven, Docket No. 359030 (April 10, 1995) (Hodgson, J.). The three criteria are: "(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least some penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, competitors or other businessmen." (Citations omitted). CheshireMortgage Service, Inc. v. Montes, 223 Conn. 80, 105-06,612 A.2d 1130 (1992). With respect to the third criterion of consumer injury, moreover, "the injury itself must satisfy three tests. It must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces and it must be an injury that consumers themselves could not reasonably have avoided." Letter from Federal Trade Commission (Dec. 17, 1980) as quoted inA-G Foods, Inc. v. Pepperidge Farm, Inc., supra,216 Conn. at 216. Finally, facts supporting a finding as to each criterion must be pled with specificity. See S.M.S. Textile Mills, Inc. v.Brown, Jacobson, Tillinghast, Lahan King, P.C., supra,32 Conn. App. at 797.
The core allegations of fact against Acker are that he sold CT Page 6465 the premises to the Farrahs in June 1990, agreed to let them paint the exterior and took back a mortgage. Based on these facts and the fact that in December 1993 the Farrahs learned they were exposed to lead-based paint, the Farrahs have claimed Acker was negligent in failing to warn them of the hazards of lead paint, of the means to de-lead and to inspect for lead paint; in failing to de-lead the premises; and in failing to inspect the premises.
These allegations fail to meet the first and second criteria he cigarette rule in that the alleged negligent conduct is not unfair, immoral, unethical, oppressive or unscrupulous. Indeed, as discussed above, Acker had no duty to de-lead or inspect the premises, nor are the facts sufficient to establish his liability for failure to disclose a dangerous condition. See pages 5-6, supra. More significantly, the third criterion is not met because the Farrahs themselves, upon conducting their own examination of the property, could reasonably have avoided any injury due to exposure to lead in the paint. Acker, as a vendor of real estate could reasonably expect the Farrahs to inspect the property and draw their own conclusions as to its condition. Restatement (Second), Torts, § 353, comment (d). Indeed, it may be inferred from the allegation that Acker agreed to let the Farrahs paint the exterior of the premises that, at the least, they had inspected the exterior and determined it was in a condition that required painting. In the absence of sufficient allegations of any of the three criteria required to state a CUTPA claim against Acker, the fourth count must be stricken.
 Conclusion
In sum, the defendant Acker's motion to strike the first, third and fourth counts against him are granted. The motion to strike all counts against the defendants Mira and Prudential is granted and the fifth, sixth, seventh, ninth, tenth, eleventh and twelfth counts accordingly are stricken.
LINDA K. LAGER, JUDGE